ZACK PARRAMORE, *Appellant,* v. LUCY PARRAMORE, *Appellee.*

1.  Where an original bill in the nature of a bill of review to annul a final decree of divorce on the ground of fraud, is brought within two years after the divorce decree, and within four months after knowledge of the divorce, the complainant should not, under the circumstances of this case, be denied relief on the ground of laches.

2.  In suits involving the marital status and rights, strict rules of procedure are not required; and where the rights of the parties are in substance protected, the proceedings are largely in the discretion of the trial court.

3.  Where the discretion of the chancellor is not shown to have been abused, an order receiving testimony that was taken after the time allowed by the rule for taking testimony has elapsed, will not be disturbed in cases affecting the marriage status.

4.  In a suit involving the marriage status it is within the discretion of the chancellor, where there is no abuse, to allow testimony to be taken after the case is set down for hearing on bill, answer and replication, after the time for taking testimony has elapsed.

5.  Where fraud of the complainant. in making affidavit for con-
    structive service in a divorce proceeding is shown, and the de-
    fendant did not waive a legal service of process or appear in
    the cause, a vacation of the divorce decree with leave to the
    defendant therein to answer or demur, will not be disturbed
    on appeal, especially where there appears to be a meritorious
    defense.

This case was decided by Division A.

Appeal from the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the
court.

*Calhoun & Campbell,* for Appellant;

*D. L. McKinnon,* for Appellee.

WHITFIELD, C. J.—On May 20, 1909, Lucy Parramore
brought an original bill in the nature of a bill of review
against Zack Parramore to annul a final decree on the
ground of fraud.  Shipman on Eq. Pl., p. 316; Van Zele
Eq. Pl., 485.

The bill in substance alleges that Zack and Lucy were
married in 1894, and lived together as husband and wife
till February, 1905, when she left him because of his
extreme cruelty to her, specific instances being stated;
that failing to secure better treatment from her husband
she went to Texas where she had formerly lived; that
"the defendant well knew her location; not only was it
known in the neighborhood by his kinsmen and friends,
but he himself wrote letters to her and communicated to
her and addressed his letters to her at Cameron, Texas;"
that on March 10, 1906, while complainant was residing

in the town of Cameron, Texas, the defendant filed a bill for divorce from complainant; that "well knowing that the defendant did not live in the town of Waco, Texas. but was living in the town of Cameron, Texas, he the said defendant corruptly intending to perpetrate a fraud on this court and to obtain a divorce from the complainant without her knowledge of same or service of process or of any opportunity for her to be heard, falsely and corruptly sued the complainant as being a resident of the. city of Waco, Texas, and swore in an affidavit attached to the bill of complaint that the said complainant resided at Waco, Texas; that among the files in said case is a sealed envelope purporting to have been sent by the United States mail to the complainant at Waco, Texas, and returned by the clerk of the circuit court of Jackson county, Florida, as not being called for;" that complainant "knew nothing whatever of any suit being brought against her until in the Spring of 1907, when she learned through communication with friends that such a suit was pending; that she returned shortly afterwards to Jackson county, Florida, met the defendant and he told her that he had become reconciled to her; was willing to live with her again, and that the suit should be withdrawn, and that she need not make a defense to the same as he would not press it any further; that complainant supposed that said suit was withdrawn or she would have entered her appearance and made a defense to the same. During the year of 1907, or the greater part thereof, the complainant was in Jackson county, Florida, and the defendant knowing that it was customary in divorce cases for the defendant in such cases to be allowed to appear before the master, did not take any proceedings until after the complainant had left Florida for Texas in the Fall of 1907, then the order of reference which had been made by your

Honor on the 20th day of August, 1907, was filed November 9, 1907. And on the same day the report of testimony taken was filed. And on the same day a decree of divorce was filed. Complainant further avers that after she left Florida for Texas in the Fall of 1907, and at various intervals during the year of 1908, after the aforesaid decree of divorce had been granted, the defendant continued to write letters to the complainant at Cameron, Texas, and to contribute some money for her support and maintenance, and at times sending her presents. All of these letters were addressed by defendant to complainant calling her his 'dear wife' and subscribing himself as 'your husband' or 'your loving husband.' They were all full of protestations of love and affections for her. Complainant has not preserved all of these numerous letters not knowing they would ever be of any consequence as complainant did not know the divorce proceedings were pending but supposed they were dismissed. Complainant avers that she has some of these letters and is ready to produce them in court. Complainant avers that the object and purpose of these letters were to practice fraud upon this court and to mislead her as to the divorce proceedings. Complainant knew nothing whatever of any divorce decree and further prosecution of said divorce case until the defendant wrote to her on the date of January 29, 1909, that he contemplated taking another wife. Complainant at first thought the matter a joke, but afterwards on more serious reflection concluded to come home and look after the matter which she did as early as she could raise the money; and came back to Jackson county, Florida, in the early part of the month of April, 1909, just past.

Complainant alleges that she never appeared or plead in the aforesaid divorce proceedings instituted by defend-

ant against her.  She further alleges that in view of the premises the decree of divorce aforesaid is fraudulent and void.  Complainant alleges that she is now living separate and apart from defendant because since the defendant has procured the fraudulent decree of divorce said defendant refuses to recognize the complainant as his wife, but has contracted a pretended marriage with another woman.  Therefore complainant says that she is living separate and apart from said defendant through his fault and not her own."

In his answer the defendant Zack Parramore admits the marriage with Lucy, and denies the allegations of the bill except as to non-appearance of Lucy in the divorce suit; avers that Lucy had full knowledge of the proceedings and denies that the "decree of divorce was fraudulent and void;" "denies that complainant is living apart from him because of the fact that he has procured this divorce, but admits that he refused to recognize her as his wife and admits that subsequent to the divorce herein granted he had married again and is living with his second wife;" avers "that he and complainant were married in 1894 as alleged and lived continuously together as man and wife until about six years ago; that during the time they so lived together he did all in his power to make life comfortable and happy for the complainant herein; that about two years before she left him she began to get cross and dissatisfied with him and refused to cook his meals and refused to wash his clothes or attend to shousehold duties, but would wander around in the settlement, staying part of the time at one neighbor's and part at another's; this defendant being a farmer by trade and dependant upon his labor and that of the complainant to make a living for them, said complainant refused in any

way to help him work his crop or to do any of the household duties, and notwithstanding she failed to do this he continued to support her to the best of his ability; that about six years ago she determined that she didn't care to live with him any further and moved away and went up about twelve miles from him and stayed there about six or eight months without the consent of the defendant; then she came back and stayed home a few months, this defendant caring for her and she was not required to do any farm work or any heavy work about the house, half of the time she didn't even cook defendant's meals. Then the defendant moved away to some other place and stayed about a year of her own accord and then went to Marianna about twenty miles from complainant's home and stayed in Marianna against complainant's will; then she of her own accord went off to Texas; this defendant being always willing, ready and anxious to take care of her to the best of his ability and have her with him, she wilfully and continuedly deserted defendant for a period of nearly 5 years, during which time he brought a suit for the divorce alleging as his grounds desertion on the part of the complainant herein; that he was first advised and believed at the time she had gone to Mississippi where he was told she remained for some time and subsequently she went to Waco, Texas, where this defendant was informed by her friends she stayed, where she said she had some relatives; defendant then renewed his application and on return day of the advertisement the complainant came to Marianna in person and stated to the defendant she had been living in Texas and received notice of the divorce suit; he again prevailed with her to go home and live with him as his wife, that he would take care of her and do the best he could; she did not want to come and live with him but stated that she never intended to live with ·

him again but she wanted a part of the property that this defendant had at this time; defendant stated tht he would give her half of the property if she would go home and live with him and would be willing to dismiss the suit and make up, but she refused to accept either of these offers, the suit was then pending she having counsel to represent her in soliciting from this defendant a proposition of settlement or compromise of what she called an alimony suit, stating that all she wanted was a part of the property and she cared nothing about ever living with this defendant again; that they did not come to any terms of agreement, all agreements being based upon complainant coming back to this defendant and live with him and she stated to this defendant that she would not live with him any more as she didn't care to live in the country; she preferred to live in town but would abandon the defense to the divorce suit if he would give her a bond guaranteeing to her that while she was in Texas that he would not complete this suit, and this defendant told her positively that he would not give her any bond, that if she wanted to be his wife, she would have to live with him on his farm in the country where he was accustomed to make his living; this defendant even invited her to go home with him and she refused to go out to his house and has never stayed all night at this defendant's house in four years notwithstanding she has had no cause whatever to abandon this defendant.

This defendant for further answer says that during the time the complainant was in Texas, he wrote her a number of letters as a husband would to a wife, seeking her to return to him and always hoped he would bring about a reconciliation; that even after the divorce was granted he wrote her some letters, that he felt kindly towards her and would have been willing to re-marry her

if she would have come home and lived with him as his wife, and perhaps told the complainant in these letters words to that effect; on one occasion this defendant says that he received information that the complainant was ill and out of work and he sent her a pair of shoes and three dollars at her request; that his feelings have always been the most affectionate towards complainant and hers have always been that of indifference and money seeking and she seemed not to care for him but was only after his property.

This defendant says further that after his divorce was granted he was a farmer and lived out alone and has found it to his interest to take unto himself another wife on account of the desertion of complainant; that he has not written to complainant or sent her anything or had any communication whatever through friends or otherwise since he married his second wife, having given up all hopes at reconciliation with complainant; that he has never at any instance told her that the divorce suit was dismissed or ever promised to dismiss it in any way; that the said divorce was obtained in good faith and on properly proven grounds and absolutely free from any fraud whatever; that prior to the time the complainant permanently left this defendant, he was going to make a sale of a piece of land and she insisted that if she executed the deed to the land she must have a deed to forty acres too and in order to appease her fancy he deeded her a tract of land at her request, which land complainant now has and claims as her own, and is able to pay her own attorney's fees with this land and money she has earned during her travels as she is able to travel around from Florida to Texas and back every few years.

This defendant further answering says as to the allegations that he had ever done any violence to complainant

is absolutely untrue except as this; this defendant is a
hard working man and very economical endeavoring to
save his earnings and in the early part of their life, she
would steal his money out of his pocket and take his prop-
erty and dispose of it and was extravagant and they would
have some quarrelings at times and he has once or twice
chastised her moderately but never in any instance has
he bruised, scarred or maimed her up or ever struck her
with any stick or anything of the kind; that he has never
drawn any knife on her attempting to cut her as alleged;
that for five years prior to the date she left his house they
had very few harsh words and in no instance did he ever
strike her during that period of time; this defendant is
a man of about sixty years of age, and the complainant
is a woman about forty-two years old, and he has always
endeavored to reconcile this difference and get her to live
with him and she has simply been wandering around over
the country for nearly ten years, even prior to the time
she last left him she was gone a greater part of the time
she pretended to live with him; that the said complain-
ant had a friend in Texas named Henry Ellis whom he
supposed she lived with at the time he brought this suit,
and that complainant didn't seem to care for this defend-
ant as alleged, except for his money, and when she was
down here looking after the divorce suit she said she did
not care to live with this defendant and never intended
to live with him, she simply wanted a part of his prop-
erty, or wanted to keep the property together so if the
defendant should die she would get it, and if the com-
plainant should die first the defendant would get it; de-
fendant being much the oldest felt like the advantage was
in favor of the complainant, besides he was not willing
to live by himself, and she living in Texas, and was ad-
vised and believes and still believes that he had a merito-

rious case of wilful, obstinate and continued desertion as provided for by the statute.

This defendant by way of demurrer submits to the court that the said complainant does not in and by her said bill of complaint make or state such a case as to entitle her to the relief prayed for and prays the same advantage on this point as if he had especially demurred to the bill of complaint."

Replication was filed and testimony taken.

The decree of the court states that "this cause coming on for final hearing on the pleadings and proof, of which hearing both parties have due notice and the court having fully considered the testimony and heard argument of counsel and being fully advised, is of the opinion that the complainant has sustained by testimony the allegations of her bill charging that the final decree of divorce in the suit of Zack Parramore against Lucy Parramore, signed on the 6th day of November, 1907, was obtained by the fraud of said Zack Parramore in falsely alleging in his affidavit for the securing of the service by publication that he believed that said Lucy Parramore was a resident of Waco, Texas; Therefore, it is ordered, adjudged and decreed as follows:

1. That the final decree of divorce entered on the 6th day of November, 1907, in the suit of Zack Parramore against Lucy Parramore as filed on the 9th day of November, 1907, be and the same is hereby vacated, set aside and annulled and the marriage status reinstated as between said parties, and said suit of Zack Parramore against Lucy Parramore is hereby reinstated, with leave to said Lucy Parramore to answer or demur to the bill of complaint in said cause on or before the rule day in March, 1911, failing which the said bill may be taken as confessed against her as of course.

It is further ordered, adjudged and decreed that the prayer of the bill of complaint in this cause asking an allowance of alimony to said Lucy Parramore, be and the same is hereby denied without prejudice to her right to apply for said alimony by petition or answer in the suit of Zack Parramore against Lucy Parramore, which said cause is reinstated by this decree.

It is further ordered, adjudged and decreed, that the said Zack Parramore, defendant in this cause, do pay all cost of this proceeding, including an attorney fee of fifty dollars to the solicitor of said Lucy Parramore, which the court finds to be a reasonable fee, for which costs and attorney's fee as taxed by the clerk let execution issue in due form of law."

The defendant appealed.

On the showing made the complainant has not lost or abandoned her right by laches. In suits involving the marital status and rights, strict rules of procedure are not required; and where the rights of the parties are in substance protected the proceedings are largely in the discretion of the trial court. See Spencer v. Spencer, decided at this term. Where the discretion of the chancellor is not shown to have been abused, an order receiving testimony that was taken after the time allowed by the rule for taking testimony has elapsed, will not be disturbed in cases affecting the marriage status. And it is within the discretion of the chancellor, where there is no abuse, to allow testimony to be taken after the case is set down for hearing on bill, answer and replication after the time for taking testimony has elapsed. On the case made it was not error to vacate the final decree of divorce and to reinstate the divorce proceedings with leave to the defendant therein to answer or demur. The evidence justifies the finding that the affidavit as to the residence

of the defendant on which the constructive service by publication was had on Lucy Parramore was false and fraudulent. This warranted the decree vacating the divorce decree, the defendant therein not having appeared in the cause or waived a legal service of process therein. The allowance for attorney fee is not excessive, and is proper under the circumstances of this case.

The decree is affirmed.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.