LUCILLE HOWARD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4948–67. Filed April 27, 1970.

*Robert O. Rogers*, for the petitioner.
*J. Patrick McElroy*, for the respondent.

858

OPINION

Respondent contends that the $30,000 in cash and the two water-front lots valued at $5,000 each received by petitioner from her former husband Vince Nelson on April 19, 1965, for signing her name to a deed constitute taxable income to her under section 61 of the 1954 Code and the correlative regulations.[3] Essentially, it is respondent's position that petitioner was validly divorced from Nelson in 1944 and, consequently, she had no inchoate dower rights in his land to release upon the sale thereof to Bessemer more than 20 years after this divorce. Petitioner, in opposition, claims that the Nelson divorce was invalid because of fraudulent constructive service of the divorce complaint on her and, therefore, she still had her inchoate dower rights which she released in 1965 for the $40,000 in controversy which constitutes nontaxable income.

Respondent's determination is, of course, *prima facie* correct and the burden is on petitioner to demonstrate error therein. For reasons hereinafter discussed, we do not believe that she has sustained her burden of proof.

Preliminarily, we note there is no dispute herein that under a valid divorce decree and in accordance with a property settlement agreement incorporated therein, any real estate or other property transferred by a husband to his wife in consideration for a discharge of her dower rights is generally not taxable to her. Rev. Rul. 67–221, 1967–2 C.B. 63. See *United States* v. *Davis*, 370 U.S. 65 (1962), which holds that under present administrative practice, a payment for the release of marital rights is not considered a taxable event as to the wife.

It has long been settled under Florida law that a decree of divorce based on service by publication where personal service of process cannot be had is valid. As a condition precedent to service by publication,

---

[3] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;
Income Tax Regulations:
Sec. 1.61–1. Gross income.

(a) *General definition.* Gross income means all income from whatever source derived, unless excluded by law. Gross income includes income realized in any form, whether in money, property, or services. Income may be realized, therefore, in the form of services, meals, accommodations, stock, or other property, as well as in cash. * * *

an affidavit must be filed in the action executed by the plaintiff, his agent, or attorney, setting forth, *inter alia*, that diligent search and inquiry have been made to discover the name and address of the defendant and that such residence is unknown to the affiant. Fla. Stat. Ann. sec. 49.041 (1969).[4] Constructive service by publication in a divorce suit has been held valid even though the defendant has been within the State when the plaintiff in good faith believed that the defendant has not been within the State. *Ringling* v. *Ringling*, 117 Fla. 423, 158 So. 125 (1934). Also, it is well established in Florida that where the decree of divorce is obtained by perjury and fraud practiced upon the court by means of a false affidavit for an order allowing constructive service, the defendant may institute a bill in the nature of a bill of review to vacate and set aside the decree so that the marital status of the parties, including dower rights, is revived. *Russell* v. *Russell*, 129 Fla. 868, 177 So. 280 (1937) ; *DeSosa* v. *DeSosa*, 104 Fla. 219, 139 So. 581 (1932) ; *Parramore* v. *Parramore*, 61 Fla. 701, 55 So. 795 (1911). Likewise, it is settled that one who seeks to set aside a final decree of divorce on the ground of deceit assumes the burden of proving its invalidity by a preponderance of the evidence, including the fact that he acted in good faith and with reasonable promptness. *Larsen* v. *Larsen*, 180 So. 2d 393 (Fla. 1965).

In the instant case, the record shows that in 1944 Nelson, who was in the U.S. Army and not living with his wife, instituted divorce proceedings against Lucille with constructive service. Based upon an affidavit attached to his bill of complaint for divorce, alleging that Lucille was a resident of Lockport, N.Y., and testimony received at the hearing, a divorce was granted by default judgment by the Circuit Court of St. Lucie County, Fla., on September 22, 1944. Petitioner learned of the divorce within a few weeks but took no positive steps to restore the marriage or claim any marital rights through legal proceedings. After more than 20 years, petitioner now urges that this decree was void because the service by publication was procured by fraud, since Nelson knew where she was living at the time he brought

---

[4] Sec. 49.041. Sworn statement, natural person as defendant.

The sworn statement of the plaintiff, his agent or attorney, for service of process by publication against a natural person, shall show :

(1) That diligent search and inquiry have been made to discover the name and residence of such person, and that the same is set forth in said sworn statement as particularly as is known to the affiant; and

(2) Whether such person is over or under the age of twenty-one years, if his age is known, or that his age is unknown ; and

(3) In addition to the above, that the residence of such person is, either :

(a) Unknown to the affiant ; or

(b) In some state or country other than this state, stating said residence if known ; or

(c) In the state, but that he has been absent from the state for more than sixty days next preceding the making of the sworn statement, or conceals himself so that process cannot be personally served upon him, and that affiant believes that there is no person in the state upon whom service of process would bind said absent or concealed defendant.

his divorce action and intentionally perjured himself to the court in his affidavit to prevent her from responding to his complaint.

No convincing evidence has been adduced by petitioner to support her contention. The last-known address of petitioner mentioned by Nelson in his Martin County divorce complaint, which was dismissed without prejudice by mutual consent, is "c/o the 19th Hole," a bar in Lake Park, Fla., where she was served with a copy of the complaint on November 6, 1943, in a prior divorce action which he instituted and later dismissed. She admitted this to be her address in her answer to the complaint. Lucille testified that at this time she was living on Juno Plantation which she rented in Juno, Fla. While Lucille may only have been working at the bar in Lake Park, Fla., at the time, it appears that Nelson did not know of her permanent place of abode even when he brought his first action and her residence in Juno explains, to some extent, why Nelson was unable to locate her when he brought his second suit for divorce.

Although Lucille avers that she resided in Juno until 1947 or 1948, the record strongly suggests that she virtually lived as a transient during the period involved and it is, therefore, quite understandable that Nelson was forced to resort to service upon her by publication. In this connection, we note that during her marriage to Nelson she received her family military allotment in the mail at Jupiter, Fla. However, she received a notice through the mail at the Post Office in Lake Park, Fla., that her family allowance had been discontinued as of September 30, 1944. Also we note that the attorney for Bessemer traced her residence to Lake Park some 20 years later. Lucille admits that she was not living in Jupiter, Fla., where she previously had received her family allotment and where Nelson claimed they last cohabited as man and wife in August 1944 when he filed the complaint for divorce. She has failed to convince us that Nelson knew her whereabouts when he filed his complaint or thereafter during the pendency of the final divorce action. Manifestly, the court which granted him the divorce decree was satisfied that he had made an effort appropriate to the circumstances under the Florida statute, sec. 49.041, *supra*, to ascertain Lucille's last-known address so that personal service of process could be obtained.

Petitioner relies principally upon self-serving declarations that the Nelson divorce was procured by fraud on the court and is void. Her testimony for the most part was inconclusive and conclusory in nature and we are unable to find any substantiation in the record for her claim. In our opinion, she has not established that the Nelson divorce decree was obtained by fraud. Under the circumstances, we find no justification to impeach or disregard the Florida decree of divorce.

Considering the foregoing and the record as a whole, we must conclude that the marital status of Lucille and Nelson was terminated by the divorce decree obtained by him in September 1944 and that any inchoate right of dower on the part of Lucille was also extinguished by this decree.[5] *North* v. *Ringling*, 149 Fla. 739, 7 So. 2d 476 (1940); *Pawley* v. *Pawley*, 46 So. 2d 464 (Fla. 1950). Accordingly, we hold that petitioner had no dower right to release in April 1965 when Nelson sold a tract of land to Bessemer.

Assuming *arguendo* that Nelson's divorce had been obtained as a result of his perjury and fraud practiced on the St. Lucie County Court, it is clear under Florida law that petitioner would nevertheless be precluded by laches from claiming any dower rights in Nelson's property because of her conduct and lack of diligence subsequent to the decree. *Carpenter* v. *Carpenter*, 93 F. Supp. 225 (S.D. Fla. 1950). Despite her knowledge of the Nelson divorce and her alleged doubts as to its validity, she failed to take any affirmative steps to assert her rights as the wife of Nelson prior to 1965. In fact, she remarried in 1947 and was again divorced in 1949. No plausible excuse has been presented by Lucille for the long delay in contesting Nelson's divorce. Ostensibly, she has sat by idly for more than 20 years in an attitude of acquiescence to this decree until she was asked by Bessemer's attorney to join in the execution of the deed. Under the circumstances, we believe that her asserted claim for dower in 1965 would have become stale and barred by equitable estoppel under Florida law. *Valverde* v. *Valverde*, 121 Fla. 576, 164 So. 287 (1935).

In challenging respondent's determination, petitioner relies on *Lyeth* v. *Hoey*, 305 U.S. 188 (1938), for the principle that where there is a bona fide controversy between the parties, the tax treatment of a payment in compromise thereof is to be determined by looking to the nature of the item for which the payment is a substitute and that this principle is equally applicable to those situations where a compromise settlement is reached as a result of negotiations prior to the institution of a suit. Petitioner maintains that as a result of her dispute with Nelson in 1965, she received the $40,000 as a substitute for whatever dower rights she had in the land sold to Bessemer. We have carefully considered this case and find it distinguishable on its facts and inapposite. In *Lyeth* v. *Hoey*, *supra*, and numerous cases following it, there was threatened litigation over a will which was compromised in a good-faith settlement, and the heirs receiving the proceeds of the compromise received them by virtue of their heirship, as if by will. In

---

[5] It appears settled under Florida law that neither party can maintain an action after the final divorce decree for an adjudication of property rights, and that such rights become res judicata on the entry of the decree, even if they were not submitted to the court, since such rights could and should have been adjudicated in the divorce proceeding. *Cooper* v. *Cooper*, 69 So. 2d 881 (Fla. 1954).

those cases the taxpayers became heirs upon the moment of death of the decedent in question and the taxpayers' standing as heirs was not challenged. This is not the situation in the instant case, since petitioner's status as a wife had been contested. In this type of situation, State law governs the character of the funds received by petitioner, rather than the compromise rationale of *Lyeth* v. *Hoey*, *supra*. See *Grossman* v. *Campbell*, 368 F. 2d 206 (C.A. 5, 1966), where the Court held that it must look to State law to determine whether there was an actual and genuine dispute out of which a bona fide settlement arose, and if there was no such dispute and settlement, then the principle of *Lyeth* v. *Hoey*, *supra*, would not apply. As discussed hereinabove, petitioner has not established to our satisfaction that she would be successful in her contention that she was the wife of Nelson in April 1965 under Florida law.

Even if the doctrine of the *Lyeth* case were applicable here, petitioner would not prevail. Some evidence beyond the mere retention of a lawyer, a hollow threat and recognition (under economic duress) of the existence and disposal of a groundless claim must be shown. There is no direct evidence of actual threatened litigation by petitioner with respect to the 1944 divorce decree having been communicated either to Nelson or his attorney. Petitioner's receipt of the $40,000 did not reflect the strength or merit of her legal position in claiming to be the wife of Nelson in 1965. We are convinced that Lucille received the $40,000 because that was the only apparent way in which Nelson was able to raise the required money to prevent a mortgage foreclosure sale of the land in question, as well as other property, scheduled to take place on April 19, 1965, the same day as the closing of the land sale to Bessemer. In order for the doctrine of the *Lyeth* case to apply, the claim asserted must have had some color of merit and the compromise must have resulted from something more than a "naked threat." *Bailey* v. *Ratterre*, 144 F. Supp. 449 (N.D. N.Y. 1956), affd. 243 F. 2d 454 (C.A. 2, 1957). Here there was no compromise settlement arising from threatened litigation involving a bona fide claim for dower rights with some measure of merit. At most, Lucille received the payment under review because Nelson was in financial distress and had no time to pursue any other course of action. She had no dower rights in Nelson's property and we therefore find that no part of the settlement payment was paid for such rights.

*Decision will be entered for the respondent.*