WORTHY W. MCKINNEY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4132-73.    Filed May 21, 1975.

*James C. Higgins,* for the petitioner.
*Donald W. Mosser,* for the respondent.

OPINION

GOFFE, *Judge:* The Commissioner determined deficiencies in petitioner's Federal income tax as follows:

| Taxable year | Deficiency |
|---|---|
| 1969 | $25,243.58 |
| 1970 | 3,447.25 |

Due to concessions, the sole issue is whether petitioner realized taxable gain on the transfer of appreciated stock to his former wife pursuant to a property settlement agreement subsequently approved in a divorce decree. All of the facts are stipulated and are so found.

At the time the petition was filed, and at all times pertinent, petitioner Worthy W. McKinney resided at Professional Park, Beckley, W.Va. Petitioner erroneously filed a joint Federal income tax return with his former wife, Esther L. McKinney, for 1969. Petitioner filed an individual Federal income tax return for 1970. Both returns were filed with the Internal Revenue Service Center, Covington, Ky.

Petitioner married Esther L. McKinney on December 30, 1945. On November 10, 1969, Mrs. McKinney filed for divorce from petitioner in the Circuit Court of Raleigh County, W. Va. (divorce court). On December 18, 1969, the divorce court entered

a final order decree of divorce between Mrs. McKinney and petitioner. That order approved a property settlement agreement; provided for joint custody of the son of the parties; ordered petitioner to provide for the future maintenance and education of his son and to pay alimony to Mrs. McKinney. The alimony payments consisted of $1,500 per month, premiums on life insurance and medical insurance policies, property taxes on an automobile, and principal payments on a promissory note on which both parties to the divorce were liable. The alimony payments were to cease upon the remarriage of Mrs. McKinney.

Petitioner and Mrs. McKinney entered into the above-mentioned property settlement agreement on December 11, 1969. The agreement provided, in general, that for and in consideration of his wife's mutual performance of covenants specifically enumerated in the agreement and for the consideration of her instituting a civil action for the termination of their marital contract, petitioner agreed to transfer to her the following assets: A new automobile; $10,000 in cash; his real and personal property interests in their residence; stock of Wellington Fund and Putnam Growth Fund; and all incidents of ownership in four life insurance policies. The agreement also provided that petitioner would indemnify his wife for her liability on a certain promissory note. The agreement further provided that as the owner and holder of 3,500 shares of Professional Optical Co., Inc.,[1] $1 common stock (representing all of the issued and outstanding shares of a total authorization of 5,000 such shares), petitioner would transfer 1,715 shares of said stock to his wife and would not vote his retained shares to authorize issuance of additional shares of that class of stock. The agreement further provided that petitioner would cause Professional Optical, Inc., to authorize and issue 50,000 shares of a second class of stock (each share having a $1 par value and dividend rights of $.032 per year) to petitioner's wife in exchange and redemption of the 1,715 shares of the existing stock that she was to receive. In consideration for the performance of all of the acts required in the agreement by petitioner, the agreement provided, in general, that petitioner's wife agreed to perform the following:

1. Institute a civil action for the termination of their marital contract.

---

[1] Professional Optical, Inc., is a West Virginia corporation conducting activities related to petitioner's business.

2. Transfer to the petitioner her interest in certain real estate jointly owned with the petitioner.

3. Allow the petitioner the first option of repurchasing their residential property at a specific appreciated value should she desire to sell that property.

4. Lease the petitioner the basement apartment in their residence subject to certain limitations; and allow the petitioner to pay certain utilities and certain other expenses in lieu of the payment of rent.

5. Deposit a key to the residence with petitioner's attorney so that access could be gained to the premises on the happening of certain events.

6. Provide for a testamentary assignment to her son of her interests in the life insurance policies that she was to receive; and provide for a testamentary reversion of such interests to the petitioner should her son predecease her.

Mrs. McKinney was not employed during her marriage to petitioner and all assets accumulated during the marriage were paid for out of petitioner's earnings. Prior to the property settlement agreement, petitioner owned all of the assets that he was to transfer to his wife under the agreement except for certain real estate jointly owned by petitioner and Mrs. McKinney.

Mrs. McKinney owned 175 shares of Professional Optical, Inc., stock prior to the agreement. Therefore, in compliance with the terms of the property settlement agreement providing that she was to receive 1,715 shares of Professional Optical, Inc., stock, petitioner transferred to Mrs. McKinney in 1969 an additional 1,540 shares of the 3,325 shares of such stock held in his name. Mrs. McKinney's shares were subsequently redeemed in exchange for 50,000 shares of a second class of Professional Optical, Inc., stock as required under the terms of the property settlement agreement.

Petitioner and Mrs. McKinney valued the 1,715 shares of Professional Optical, Inc., stock (owned by Mrs. McKinney by virtue of petitioner's performance of the terms of the property settlement agreement) at $50,000. Petitioner's basis in the 1,540 shares of Professional Optical, Inc., stock transferred to Mrs. McKinney pursuant to the property settlement agreement was $1,540.

Petitioner did not report any gain or loss on the transfer of the 1,540 shares of Professional Optical, Inc., stock on his 1969 Federal income tax return. In addition to other adjustments which have been resolved by the parties, the Commissioner determined that petitioner realized a $43,358.75 long-term capital gain on the disposition of such stock giving the following explanation in the statutory notice of deficiency:

| | Sale price | Basis | Gain |
|---|---|---|---|
| 1,540 shares Professional Optical, Inc. _____ | $44,898.75 | $1,540 | $43,358.75 |

Inasmuch as a value of $50,000.00 was placed on 1715 shares (during property settlement negotiations incident to a divorce) and as Esther McKinney already possessed ownership of 175 shares, the 1540 shares transferred to her in a property settlement had a value of $44,898.75 ($50,000.00 × 1540/1715).[2]

Respondent, under the authority of *United States v. Davis*, 370 U.S. 65 (1962), contends that petitioner realized a taxable gain upon the transfer of Professional Optical, Inc., shares to his wife pursuant to the property settlement agreement incident to the divorce. Emphasizing that under the applicable West Virginia statutes[3] the divorce court merely had jurisdiction to award alimony and to compel either of the parties to return property in his or her possession to the rightful owner, petitioner argues that *United States v. Davis, supra,* is not controlling because in 1969 neither party to the divorce had rights in the property of the other (comparable to those of the Delaware spouse in *Davis*) which could be bargained and sold or determined by court decree. Accordingly, petitioner contends that since he did not bargain for, nor did his former spouse release or exchange, any marital rights, the transfer of 1,540 shares of Professional Optical, Inc., stock pursuant to the above-described property settlement

---

[2] Although not raised by petitioner, we note that $50,000 × 1540/1715 = $44,897.95, not $44,898.75 as computed in the statutory notice. This can be corrected in the computation under Rule 155.

[3] W. Va. Code Ann. sec. 48-2-15 (Cum. Supp. 1974) provides in part as follows:

Upon ordering a divorce, the court may make such further order as it shall deem expedient, concerning the maintenance of the parties, or either of them; * * * For the purpose of making effectual any order provided for in this section the court may make any order concerning the estate of the parties, or either of them, as it shall deem expedient.

W. Va. Code Ann. sec. 48-2-16 (Cum. Supp. 1974) provides:

All judges and courts of this State, called upon to fix, ascertain and determine an amount as alimony, support or maintenance to be paid by a spouse or to modify any order pertaining thereto, shall take into consideration, among other things, the financial needs of the parties, the earnings and earning ability of the husband and wife, the estate, real and personal, and the extent thereof as well as the income derived therefrom of both the husband and wife and shall allow, or deny, alimony or maintenance or modify any former order with relation thereto, in accordance with the principles of justice. (1933, c. 27; 1969, c. 49.)

W. Va. Code Ann. sec. 48-2-21 (Cum. Supp. 1974) provides:

Upon decreeing the annulment of a marriage, or upon decreeing a divorce, the court shall have power to award to either of the parties whatever of his or her property, real or personal, may be in the possession, or under the control, or in the name, of the other, and to compel a transfer or conveyance thereof as in other cases of chancery. (1931 Code, sec. 48-2-19; 1935, c. 35; 1969, c. 49).

agreement was a voluntary act which did not give rise to a taxable event for purposes of sections 61(a) (3), 1001, and 1002.[4]

Petitioner is correct in arguing that his wife did not have a right to a share of her husband's property in a divorce in West Virginia (in 1969). The wife does, however, have rights of descent and distribution and dower.[5] In addition, the divorce court in West Virginia shall take into consideration the property of both spouses in ascertaining the amount to be awarded as alimony, support, or maintenance. See W. Va. Code Ann. sec. 48-2-16 (Cum. Supp. 1974) at n. 3 supra.

Respondent merely argues that petitioner realized a gain on the transfer of 1,540 shares of stock in Professional Optical, Inc., because it was a transfer incident to a property settlement agreement entered into pursuant to a divorce. Because the parties to the agreement, in effect, determined the value of the shares transferred by petitioner to be $44,898.75, respondent argues that such amount equals the value of the marital rights relinquished for such shares. Such an argument is too simplistic. Petitioner complains in his brief that respondent unfairly computed the gain because he failed to take into consideration the values of all the property transferred by both parties pursuant to the divorce and property settlement agreement. Respondent counters by citing his Rev. Rul. 74-347, 1974-2 C.B. 26. Even if that revenue ruling constituted authority for respondent's position, which it does not, it is inapplicable because it applies to jointly owned property and the stock in question and other property transferred by petitioner was owned solely by petitioner. Because West Virginia is not a community property State and does not have a law like Oklahoma,[6] title controls ownership.

We conclude that the transfer of stock was a taxable event but respondent erred in taxing only the gain on the shares of Professional Optical, Inc., without taking into consideration all of the transfers and payments made by petitioner provided for in the property settlement agreement and divorce decree. Although West Virginia law is different from Delaware law (which was involved in Davis v. United States, supra), the amount of

---

[4] Unless otherwise noted, all Code section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue.

[5] W. Va. Code Ann. sec. 42-1-1 (descent), sec. 42-2-1 (b) (distribution), sec. 43-1-1 et seq. (dower).

[6] Collins v. Commissioner, 412 F. 2d 211 (10th Cir. 1969), revg. and remanding 46 T.C. 461 (1966).

property owned by the parties determines the amount of alimony, support, or maintenance and is, therefore, closely intertwined into what the parties undertake to do to settle their respective contractual obligations and rights growing out of dissolution of the marriage contract. The transfers by petitioner to his wife are, therefore, taxable.

*Davis v. United States, supra,* created a presumption that the rights given up by a party to divorce equal what is received in exchange therefor. Such a concept necessarily dictates that the total values of property received by each must be equal. This, of course, overcomes the difficult problem of placing a value on various marital rights but it also means that if values can be assigned to all tangible assets transferred by each party and all payments for alimony and support, the disparity between what the respective parties give up must be the value of the marital rights. Neither party can, therefore, have a net gain or loss by reason of the overall transaction of settling their rights arising out of the marriage contract. Each party, will, however, have a gain or loss as to specific items of property (as distinguished from inchoate rights) transferred pursuant to the divorce at a value which exceeds or is less than the cost basis of that item of property in the hands of the person transferring it unless the transfer is a division of property owned by both as a result of title, community property law, or by reason of other local law.[7] Petitioner transferred not only the stock in Professional Optical, Inc., but also other stocks, an automobile, insurance policies, and his interest in real estate. The properties other than the real estate were not jointly owned and petitioner may have suffered losses on some of the transfers.

Because the case was fully stipulated and no opening statements were made, petitioner's argument about the tax treatment of other items transferred was raised for the first time in his opening brief. Respondent, in his reply brief, does not argue about the untimeliness of the argument. Instead, he attempts to brush the argument aside by reference to his Rev. Rul. 74-347, *supra.* We think respondent is too cavalier about the entire matter. Therefore, because a decision must, in any event, be entered under Rule 155, the parties are directed to stipulate or otherwise move that the Court take other action to determine the other

---

[7] See n. 6 *supra.*

gains or losses realized by petitioner in making the transfers incident to the property settlement agreement and divorce decree, which shall be taken into account in computing the decision to be entered under Rule 155.

*Decision will be entered under Rule 155.*

---

[1] Unless otherwise noted, all Code section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue.