JAMES G. CARSON, JR. AND KAREN K. CARSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carson v. Commissioner
Docket No. 3540-77.
United States Tax Court
T.C. Memo 1978-190; 1978 Tax Ct. Memo LEXIS 326; 37 T.C.M. (CCH) 818; T.C.M. (RIA) 780190; May 24, 1978., Filed *326 Alvin R. Wohl, for the petitioners. Gordon W. Cook, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined a deficiency of $19,045 in petitioners' Federal income tax for the year 1973. Petitioners have conceded one adjustment to income. The isues remaining for our decision relate to the Federal income tax consequences of the court ordered property settlement incident to the divorce of petitioner James G. Carson, Jr. from his former wife, Mary Todd Carson. We must decide whether, as a result of the property settlement, petitioner James G. Carson (1) is entitled to recognize a capital loss of $905 and (2) received a basis of $26,400 in certain medical accounts receivable. All of the facts have been stipulated. The stipulation of facts and joint exhibits are incorporated herein by this reference. The pertinent facts are summarized below. James G. Carson, Jr. (petitioner) and Karen K. Carson were legal residents of Napa, California, when they filed the petition in this case. They filed a timely joint Federal income tax return for the taxable year 1973 on the cash receipts and disbursements method of accounting. *327 Petitioner separated from his former wife, Mary Todd Carson, on July 1, 1972. On July 12, 1973, an Interlocutory Judgment terminating the marriage of petitioner and Mary Todd Carson was filed in the Superior Court of the State of California. The Interlocutory Judgment included a court ordered property settlement, portions of which follow: II. DIVISION OF PROPERTY
To achieve a substantially equal division of the community property: A. Respondent [Mary Todd Carson] is awarded as her sole and separate property all of the following: [Enumerated items of community property 1) through 11) with each assigned a specific agreed value (aggregate value of these items was $94,350). Enumerated items 12) to 27) without a value assigned to them.] 28) Cash payment to equalize division of community property in the amount of $1,488.00. B. Petitioner [James G. Carson, Jr.] is awarded as his sole and separate property all of the following: [Enumerated items of community property 1) through 5) with each assigned a specific agreed value.] 6) Petitioner's accounts receivable - net value $26,400.00; [Enumerated items of community property 7) through 11) with each assigned *328 a specific agreed value (aggregate value of items 1) through 5) and 7) through 11) was $81,425). Enumerated items 12) through 47) without a value assigned to them.] C. Petitioner shall pay the community obligations to FELICIA CARSON in the amount of $6,500.00 and Queen of the Valley Hospital pledge in the amount of $3,000.00 and shall hold Respondent harmless therefrom. D. Each party is awarded an undivided one-half (1/2) interest as tenants in common in the BCS Ltd Partnership. * * * F. The Good Will is found to be community property: 1) The fair market value for the Good Will shall be the sum of $20,000.00; 2) Petitioner shall pay to Respondent one-half (1/2) of the value of the Good Will at $200.00 per month, commencing August 31, 1973, without interest until the full $10,000.00 is paid in full; provided, however, that if Petitioner gets over two(2) months behind in such payments, then the unpaid balance shall draw seven percent (7%) interest. The total agreed net value assigned to the community assets in petitioner's marriage dissolution proceeding was $185,275, including $20,000 goodwill from petitioner's medical practice. Mary Todd Carson received $94,350 *329 of the community property pursuant to the Interlocutory Judgment. Petitioner received community assets having a total value of $90,925 after reduction for community liabilities for which he became solely liable. In addition each received numerous other items to which no agreed value was assigned; these items were largely of a personal nature, some with sentimental value, and apparently were equally divided. Each took an undivided one-half interest in the BCS Ltd. partnership. The Interlocutory Judgment also purported to award petitioner accounts receivable with a net value of $26,400. In fact, pursuant to California law [1] these accounts receivable were already petitioner's separate property since they were earned in his medical practice subsequent to the time of his separation from his wife on July 1, 1972. Finally, Mary Todd Carson was awarded from petitioner's separate property $10,000 in the form of a personal note from petitioner to compensate her for one-half of the goodwill and, purportedly to equalize the division of community property, a cash payment of $1,488. *330 Under the Supreme Court's decicsion in United States v. Davis,370 U.S. 65 (1962), a transfer of property from one party to another pursuant to a divorce property settlement is a taxable event. The party transferring property under such circumstances must recognize gain to the extent the fair market value at the time of the transfer exceeds his or her basis in the property. Also, recognition of loss has been allowed for property transferred to settle marital obligations if the transferor's basis exceeds the fair market value. See McKinney v. Commissioner,64 T.C. 263, 268 (1975). The spouse receiving the property, on the other hand, takes a fair market value cost basis in the property without recognizing taxable income if the transfer is in the nature of a property settlement rather than alimony. See United States v. Davis,supra at 73; Howard v. Commissioner,54 T.C. 855, 858 (1970), revd. on another issue 447 F. 2d 152, 159 (5th Cir. 1971). An exception to the general rule requiring the transfer in settlement to be treated as a taxable event occurs in community property states if the transfer *331 of property occurs incident to an equal division of community property. In that situation each spouse holds an undivided one-half interest in the entire community prior to the divorce and after the divorce holds as separate property items valued in the aggregate at approximately one-half the value of the total community property. Despite this effective exchange of interests in the property, the arrangement is treated as a nontaxable partition. The origin of this exception is in the early case of Walz v. Commissioner,32 B.T.A. 718, 720 (1935). Subsequent cases have clarified and refined this basic rule, however, to require treating a substantially unequal division of community property as a taxable sale or exchange if coupled with payment from one spouse's separate property. In that circumstance the spouse transferring more than half of the community property must recognize gain. To the extent the division is unequal, the transfer is viewed as a sale or exchange for the payment from the other spouse's separate property. See Carrieres v. Commissioner,64 T.C. 959, 964 (1975), affd. per curiam 552 F. 2d 1350 (9th Cir. 1977). In the instant *332 case we are faced with an unusual fact pattern. Under the property settlement petitioner and his former wife each received community assets of approximately equal aggregate value. In addition, however, Mary Todd Carson was awarded from petitioner's separate property cash of $1,488 and his personal note for $10,000. Petitioner contends that the award of petitioner's separate property causes the overall settlement to be a substantially unequal and therefore taxable transfer. In disallowing the claimed capital loss, respondent, on the other hand, has focused his analysis on the final holdings of community property apart from the separate property. After the property settlement petitioner held property valued at 49.1 percent of the aggregate of community assets which were assigned a value and his wife held the remainder. This nearly equal division of community assets, respondent contends, requires characterization of the property settlement as a nontaxable partition. We agree with respondent's conclusion that the loss may not be recognized, but reach that conclusion via a slightly different analytical route. Since the Interlocutory Judgment specifically provided that the $10,000 *333 personal note was to compensate petitioner's former wife for her share of the goodwill which was community property, such portion of the goodwill was the subject of a sale or exchange in which petitioner took a cost basis. See Carrieres v. Commissioner,supra at 966. For purposes of determining the characterization of the disposition of the remaining community property, we think that this sale or exchange of one-half of the goodwill effectively occurred apart from the allocation of the other one-half of the goodwill to petitioner and the division of the remaining property. The effect of this is that after subtraction for Mary Todd Carson's $10,000 share of goodwill, the remaining $175,275 of community property with assigned value was divided in kind with $80,925 or 46.2 percent received by petitioner and $94,350 or 53.8 percent received by his former wife. The actual differential in percentage of value received by each party to the divorce was even less than this, however, since community property without an assigned value was also divided, apparently equally, between petitioner and his former wife. Under these circumstances we do not believe that petitioner *334 has met his burden of proving incorrect respondent's determination that the division of the community property was not substantially disproportionate and therefore should be characterized as a nontaxable partition of community property. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Accordingly, we hold that petitioner is not entitled to recognize a loss as a result of the court ordered settlement. The second issue for our decision is whether, as a result of the court ordered property settlement, petitioner received a basis of $26,400 in certain accounts receivable which were at all times his separate property. Petitioner contends that these accounts receivable were transferred to the divorce court's jurisdiction in consideration of the divorce and property settlement and upon the distribution of the assets to him he took a fair market value basis in them. [2] Petitioner's argument is without merit. A mere recital in a divorce decree purporting to award to a party to the divorce property which at all times prior to and subsequent to the judgment was already that party's separate property has no effect on the party's *335 basis therein. The three cases relied on by petitioner are distinguishable from this case. In United States v. Davis,370 U.S. 65 (1962), the wife possessed certain marital rights against her husband in the event of divorce. In exchange for the wife relinquishing those rights, the husband transferred title in certain shares of stock from himself to his wife. The Supreme Court concluded that the wife's basis in the stock was its fair market value on *336 the date of transfer. Here, by contrast, title to the medical accounts receivable was never transferred. Petitioner held the accounts receivable as his separate property before and after the Interlocutory Judgment. He did not receive the accounts receivable in satisfaction of any marital obligations his wife may have owed him. In Hall v. Commissioner,9 T.C. 53 (1947), the wife's rights in Missouri were similar to those in Davis, and she agreed to relinquish them for $750,000. By a supplemental agreement she agreed to accept 6,000 shares of Western Auto stock in lieu of $360,000 of the $750,000 settlement. This Court found her cost to be what she gave up, i.e., a $360,000 claim against her husband instead of the fair market value of the stock on the date of acquisition. Here the petitioner did not receive the accounts receivable in exchange for his relinquishing any of his rights. They were always his property. The case of Commissioner v. Patino,186 F. 2d 962 (4th Cir. 1950), is very similar to the Davis case in that the wife relinquished certain rights against her husband in exchange for his transferring to her title to certain *337 shares of stock. The Court found the wife's basis in the stock to be the fair market value on the date of acquisition. Here Mary Todd Carson never transferred title to petitioner in exchange for his relinquishing rights because she never held title to the accounts receivable. Accordingly, on the facts of this case we hold that the petitioner did not acquire a basis of $26,400 in the accounts receivable because of the court ordered division of community property assets. Since the accounts receivable were clearly not the subject of a sale or exchange, the petitioner is not entitled to increase his basis in them. Decision will be entered for the respondent. Footnotes
1. Cal. Civ. Code sec. 5118 (West Supp. 1977); Lopez v. Lopez,38 Cal. App. 3d 93↩ (1974).
2. Even if we were to accept petitioner's contention that an effective transfer to the court's jurisdiction occurred in consideration of the divorce and property settlement, that would not help petitioner's case. Such a conclusion would require petitioner to recognize gain upon the transfer to the court measured by the difference between the fair market value of the accounts receivable, $26,400, and petitioner's basis in them, $0, which would be characterized by the nature of the accounts receivable in petitioner's hands as ordinary income. Cf. United States v. Davis,370 U.S. 65↩ (1962). Thus, petitioner would still be required to recognize an additional $26,400 of ordinary income in 1973.