BERTHA M. PENNINGTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pennington v. Commissioner
Docket No. 30830-86
United States Tax Court
T.C. Memo 1990-446; 1990 Tax Ct. Memo LEXIS 472; 60 T.C.M. (CCH) 559; T.C.M. (RIA) 90446; August 20, 1990, Filed *472 Decision will be entered under Rule 155. D. Derrell Davis, for the petitioner. Paul M. Kohlhoff, for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income taxes as follows: Year
Deficiency
1980
$  2,705.00
1981
50,022.75
1982
3,871.00
After various concessions by respondent, the issue for decision is whether, for capital gains tax purposes, petitioner received property (under a property settlement agreement with her former husband) as part of a nontaxable division of marital property or as part of a taxable sale of petitioner's interests in the property. The briefs of the parties focus primarily on the legal *474 aspects of this question. FINDINGS OF FACT At the time her petition in this case was filed, petitioner resided in Ola, Arkansas. Petitioner was married to James O. Pennington from August 30, 1941 until October 12, 1976, when they were granted a divorce by the Chancery Court of Yell County, Arkansas ("Chancery Court"). During the marriage, petitioner and Mr. Pennington individually and jointly accumulated substantial assets, among which were Mr. Pennington's medical practice and the building out of which it operated, corporate stocks, an Arkansas real estate sales corporation named Pennington Real Estate, Inc. ("Pennington Real Estate"), two residences, a farm, and approximately 34 other parcels of real estate. Some of these assets (such as the building out of which the medical practice operated, the marital residence, and some of the other parcels of real estate) petitioner and Mr. Pennington owned jointly as tenants by the entirety. Other assets were held in Mr. Pennington's name only, such as the stock of Pennington Real Estate. Unfortunately, neither the nature of the ownership interests of petitioner and Mr. Pennington in many of the assets nor the name(s) under which title *475 to many of the assets was held is completely clear. For several years following the divorce, petitioner and her attorney negotiated with Mr. Pennington over a property settlement agreement. Finally, after approximately four years, a property settlement agreement was signed. On March 11, 1980, the Chancery Court issued an order approving the agreement between petitioner and Mr. Pennington. In April of 1980, Mr. Pennington began making monthly payments of $ 1,250 to petitioner under the agreement. On May 13, 1980, the above property settlement agreement was amended, and on August 12, 1980, it was set aside. On October 17, 1980, the Chancery Court issued an order directing Mr. Pennington to convey to petitioner one-half of certain stocks that were jointly owned by petitioner and Mr. Pennington. Mr. Pennington apparently never complied with this order. On February 6, 1981, petitioner and Mr. Pennington entered into a revised property settlement agreement under which certain property was to be divided between petitioner and Mr. Pennington in settlement of all claims either party had against the other arising out of the marriage. The value of the properties subject to the revised *476 property settlement agreement was to be determined as of August 10, 1976. Under the revised property settlement agreement, Mr. Pennington was to convey to petitioner free and clear of all liens and encumbrances the home in which petitioner was then living. He was to pay $ 110,000 in cash to petitioner, and he was to assume and pay outstanding indebtedness totaling $ 260,000 on unspecified jointly held property. Apparently the home referred to was known as "the Cobb property" which had been purchased in 1977 for $ 60,000 by Mr. Pennington or by Pennington Real Estate. Also under the revised property settlement agreement, Mr. Pennington was required to pay petitioner a total of $ 150,000 in monthly installments of $ 1,250, with credit to be given for payments made since April of 1980. Mr. Pennington was to execute a promissory note and mortgage as security for payment of the $ 150,000, and his obligation to pay the $ 150,000 was to be unaffected by either the remarriage of petitioner or by Mr. Pennington's death. In exchange for Mr. Pennington's agreement to transfer to petitioner the above-described property as part of the revised property settlement agreement, petitioner agreed *477 to relinquish her dower rights in the property that Mr. Pennington had held in his separate name during the marriage, and petitioner agreed to relinquish her interests in the property that had been jointly held during the marriage. In March of 1981, Mr. Pennington executed a promissory note in favor of petitioner in the amount of $ 135,000. Although the revised property settlement agreement specified that the note was to be in the amount of $ 150,000, the parties have stipulated that the actual amount of the promissory note was $ 135,000. On March 6, 1981, Mr. Pennington paid petitioner $ 110,000. Also in March of 1981, Mr. Pennington assumed all the liabilities on the property held jointly during the marriage. Although the revised property settlement agreement reflects that Mr. Pennington was to assume liabilities in the amount of $ 260,000, the financial statements prepared by his personal accountant as of August 10, 1976, show total liabilities of $ 165,000 on the jointly held property. Without explanation, both petitioner and respondent in their trial memoranda assert that the amount of joint liabilities assumed by Mr. Pennington was $ 89,000. In April of 1981, Mr. Pennington *478 individually and as president of Pennington Real Estate executed a quitclaim deed to the Cobb property in favor of petitioner. During 1981 and 1982, Mr. Pennington paid petitioner the monthly installment payments due of $ 1,250. On her individual Federal income tax returns for 1980, 1981, and 1982, petitioner did not report any gain relating to the relinquishment or exchange of her marital dower rights or her interests in the jointly held property for the various interests in the property received from Mr. Pennington under the revised property settlement agreement. On audit, respondent apparently determined that petitioner's relinquishment or exchange of all of her interests in the property she transferred incident to the divorce constituted a taxable sale, giving rise to $ 249,958 in capital gain income for 1981. Respondent's computation was based on petitioner's receipt of property from Mr. Pennington with an alleged value of $ 364,268 in exchange for petitioner's interests in the marital and jointly held property in which petitioner allegedly had a tax basis of $ 114,310. OPINION Section 61 [1] provides that gross income includes all income from whatever source derived. *479 Section 1001(a) provides that gain from the sale or disposition of property is the excess of the amount realized over the adjusted basis of the property. Section 1001(b) provides that the amount realized includes money plus the value of property received in the exchange. Section 1001(c) provides that, unless otherwise provided, the entire amount of gain or loss shall be recognized. For the years before us, a wife's release or transfer of her dower rights in her husband's separate property in exchange for property or other consideration is regarded as an exchange that does not result in taxable gain or loss to the wife. United States v. Davis, 370 U.S. 65, 73 n.7 (1962); [2] *481 Howard v. Commissioner, 447 F.2d 152, 159 (5th Cir. 1971), *480 revg. on other grounds 54 T.C. 855, 858 (1970); Carrieres v. Commissioner, 64 T.C. 959, 965 n.2 (1975), affd. 552 F.2d 1350 (9th Cir. 1977). This is the case regardless of the type of property the wife receives in the exchange and regardless of how much time elapses between the divorce date and the date of the settlement agreement (where the property interests exchanged are based on values as of the date of the divorce). The fair market value of the dower rights the wife relinquishes are presumed to be equal in value to the property she receives in the exchange. United States v. Davis, supra at 72. [3] Thus, there is no taxable gain or loss to the wife, and the wife takes as her basis in the property received the fair market value of such property as of the time of the divorce. Cook v. Commissioner, 904 F.2d 107, 112 (1st Cir. 1990). Where the wife gives up her interests in property that, during the marriage, was held with her former husband jointly (or as tenants by the entirety), the wife is taxable on the exchange of the property interests depending on the type of property interests the wife receives. If the wife receives in the exchange interests in property that was, during the marriage, the separate property of her former husband, the exchange is regarded as a taxable event. Hornback v. United States, 298 F. Supp. 977, 981-983 (W.D. Mo. 1969); *482 Carrieres v. Commissioner, 64 T.C. at 965-966; Edwards v. Commissioner, 22 T.C. 65 (1954). The amount of the gain is the difference between the value of the new property interests the wife receives and her tax basis in the formerly jointly held property. If the wife relinquishes her interests in jointly held property and receives a fee interest in property that was jointly held prior to the divorce, the exchange generally is regarded as a nontaxable division or partition of property. United States v. Davis, 370 U.S. at 70-71; Carrieres v. Commissioner, 64 T.C. at 964. Arkansas is not a community property state. Under Arkansas law as in effect for 1976 and prior years (i.e., during petitioner's marriage to Mr. Pennington), a wife's interest in her husband's separate real and personal property is inchoate and does not vest until the marriage is dissolved by divorce or death of the husband. LeCroy v. Cook, 211 Ark. 966, 204 S.W.2d 173, 174-175 (1947). Upon vesting of this dower interest, a wife is entitled to a one-third interest in all of her husband's separate real property for her life (i.e. *483 , a life estate) and to a one-third interest in all of his separate personal property outright. Ark. Rev. Stat. Ann. 34-1214 (1962). Property held by husband and wife as tenants by the entirety during the marriage is deemed upon divorce to be held as tenants in common, giving the wife a one-half joint ownership interest. Ark. Rev. Stat. Ann. 34-1215 (1962). Based on the above law, as in effect for the years before us, and on the facts of this case, we hold that to the extent the property interests petitioner received under the revised property settlement agreement were in exchange for petitioner's dower rights, the exchange must be regarded as a nontaxable exchange. Also, to the extent the property interests petitioner received were held as joint property prior to the divorce, the exchange must be regarded as a nontaxable partition or division of jointly held property. To the extent, however, that the property interests petitioner received under the revised property settlement agreement had been the separate property of Mr. Pennington and were received by petitioner in exchange for her interests in property that, during the marriage, had been jointly owned or owned as tenants *484 by the entirety, a taxable sale occurred, and petitioner must recognize the capital gain associated therewith. The parties are to attempt jointly to make the appropriate calculations as to what portion of the property interests petitioner received represented a nontaxable exchange for petitioner's dower interests, a nontaxable division of jointly held property, and a taxable sale of petitioner's interests in jointly held property for interests in her former husband's separate property, as well as the appropriate allocations of basis and computations of capital gain to be recognized, and thereafter to submit their Rule 155 computations. Respondent's only objection to petitioner's argument, in the alternative, that she is entitled to section 1034 nonrecognition treatment in connection with the disposition of the marital residence and her receipt of the Cobb property is that it was not properly raised. We deem the pleadings to be amended to raise this argument. Rule 41(b). We hold that petitioner is entitled to section 1034 treatment with respect to her disposition of the marital residence and her receipt of the Cobb property. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for 1976, the year of the divorce, and for 1981, the year of the purported taxable exchange in question, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. United States v. Davis, 370 U.S. 65 (1962), was legislatively overruled by the Tax Reform Act of 1984, Pub. L. 98-369, section 421, 98 Stat. 494. Section 1041 of the Internal Revenue Code currently provides that property transfers between spouses incident to divorce do not result in the recognition of gain or loss. Rather, the transfer is treated as a gift and the transferee takes the adjusted basis of the transferor. However, as the divorce at issue here took place in 1976, United States v. Davis↩ controls.
3. Rev. Rul. 67-221, 1967-2 C.B. 63, describes a property settlement agreement incident to divorce under which the husband transfers his separate real property to his former wife in exchange for the wife's relinquishment of her dower rights. The real property is regarded as equal in value to the dower rights, and there is therefore no gain or loss to the wife on the exchange. The wife takes as her basis in the real property the property's fair market value on the date of exchange. See Howard v. Commissioner, 447 F.2d 152, 159 (5th Cir. 1971), revg. on other grounds 54 T.C. 855, 858↩ (1970).