No. 23,046.

H. L. BRINKERHOFF, revived in the name of S. F. WICKER, as administrator, etc., et al., *Appellants*, v. THE HOME TRUST & SAVINGS BANK, et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. RES JUDICATA—*Judgments Conclusive Between Parties as to Matters in Issue.* A judgment is only conclusive between parties as to matters substantially in issue and actually litigated and does not conclude the parties as to everything incidentally brought into the controversy or as to matters immaterial to the subject matter in litigation.

2. SAME—*Matters of General Accounting Not in Issue or Determined in a Former Action.* The issues in the case in which the judgment in question was rendered examined, and it is held that the matter of a general accounting between two defendants was not in issue or determined, and an instruction in the present case, that by the judgment in that case a full accounting between the parties was had, was not warranted.

3. DEED—*Given to Secure Debt—An Equitable Mortgage.* A warranty deed given to secure the payment of a debt is an equitable mortgage and is to be regarded as no more than a mortgage until a written agreement or instrument is executed sufficient to satisfy the statute of frauds and transfer the interest of the mortgagor.

4. SAME—*Effect of Signed Instrument Attached to a Warranty Deed.* A brief instrument duly signed, to which the deed formerly executed was attached, and of which instrument the deed was made a part, which together evince an intention to transfer the mortgagor's interest in the land, and which is duly delivered, is sufficient to accomplish a surrender and transfer of his interest to the mortgagee or grantee; but if not so executed and delivered it will not operate to convert the mortgage into a deed or transfer of title.

5. TITLE TO LAND—*Statement as to Ownership of Land—When Competent against Plaintiff.* Statements made by plaintiff in the trial of other cases and elsewhere, that he had sold and conveyed the land and parted with all ownership of it, were inconsistent with the claims made by him in the present action and were properly admitted in evidence.

6. RES JUDICATA—*Extrinsic Evidence on Question of Former Adjudication of Issues in Instant Case.* On a question of former adjudication extrinsic evidence not inconsistent with the record may be received as to the identity of the matters that were actually involved and litigated in the former action, and the judge of the trial court is a competent witness as to such identity; but the secret and unexpressed reasons which moved him to make the decision are not admissible.

Brinkerhoff v. Bank.

Appeal from Greenwood district court; ALLISON T. AYERS, judge. Opinion filed November 12, 1921. Reversed.

J..F. Hoffman, S. F. Wicker, Gordon A. Badger, Thomas C. Forbes, all of Eureka, F. S. Jackson, of Topeka, and Frank A. Barton, of Pawnee City, Neb., for the appellants.

R. W. Blair, T. M. Lillard, both of Topeka, W. J. Gregg, of Frankfort, and J. A. Fuller, of Eureka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action of ejectment to recover possession of large tracts of land situated in Butler and Greenwood counties and designated as the Red Ranch. The plaintiffs, H. L. Brinkerhoff and his wife, alleged that they were owners of the ranch in 1910 and being indebted to their uncle, A. B. Brinkerhoff, they executed a mortgage on the ranch to him to secure an indebtedness, which was in form an absolute deed. They further alleged that plaintiffs held a lien on 2,400 acres of land in Nebraska, called the Neleigh ranch, and that in March, 1912, they proposed to their uncle to transfer a note and mortgage and certain collaterals on the Neleigh ranch in lieu of the lien which he held on the Red Ranch; that these papers were held by the uncle for some time before acceptance but in 1913 the uncle did accept the note and mortgage and at that time executed a quitclaim deed to the Red Ranch intended to be a release of the lien which he held on that ranch. They allege that after the acceptance of the lien on the Neleigh ranch in satisfaction of the lien held by the uncle, the collateral notes were surrendered to the plaintiffs and the uncle afterwards asserted and foreclosed a lien on the Neleigh ranch. It was therefore claimed by the plaintiffs that the indebtedness due from them to their uncle had been fully satisfied and that neither A. B. Brinkerhoff who has since died, nor the defendants who held possession under him have any interest in the Red Ranch.

In their answer the defendants stated that the deed of January 24, 1910, was originally executed by plaintiffs to their uncle as security for indebtedness and for such further advances as he might make to them, that the indebtedness was increased, and that on October 17, 1912, the nephew proposed to the uncle that he take over the Red Ranch, consisting of 4,560

acres at a valuation of $25 per acre, in payment of indebtedness to the uncle which then amounted to approximately $145,-000. It was averred that an agreement between them was reached by which the uncle did take the title to the ranch and gave the plaintiffs a credit of $114,000 on their indebtedness to him. As an evidence of this agreement and a transfer of the plaintiffs' interest in the ranch, it is alleged that plaintiffs took the original mortgage deed which on its face was an absolute deed and attached thereto the following instrument in writing:

"HUNTLEY, ILL., October 17, 1912.

This is to certify the attached warranty deed is given without any conditions verbal or written and the deed dated Jany 10th, 1910, given as collateral but not recorded has been cancelled and returned to us.

H. L. BRINKERHOFF
EDITH NYE BRINKERHOFF."

The defendants further averred that this combination instrument was executed in pursuance of an agreement that the original warranty deed should no longer stand as a security but that it together with the new agreement should operate as a complete transfer of title in fee without conditions, reservations or restrictions. The instrument was delivered and shortly afterwards, it was alleged, A. B. Brinkerhoff went into possession of the ranch and held it exclusively and uninterruptedly until his death, and since that time the trustee under his will has held possession of it. The defendants further stated that the plaintiffs had admitted a sale of the Red Ranch to the uncle and had given testimony to that effect in other litigation. It was also alleged that after the transfer of the Red Ranch by plaintiffs to the uncle they were still indebted to him for an amount between thirty-five and forty thousand dollars, and they specifically denied that the deed and mortgage to the Neleigh ranch were given in lieu of the indebtedness and lien held by the uncle on the Red Ranch, but were given as security on a different and new debt owed by them to the uncle. The defendants further set up the defense of res judicata based upon an action brought by the Interstate Cattle Loan Company against A. B. Brinkerhoff in a Nebraska court in which the cattle company alleged ownership and possession of the Neleigh ranch containing about 2,690 acres, and that defendants claimed some title or interest in the land, but

without ground or right and it therefore asked to have its
title to the property quieted. A. B. Brinkerhoff answered in
that action and alleged that the deed held by the cattle com-
pany was obtained without consideration and was made sub-
ject to certain liens, including one of $35,000 in favor of A. B.
Brinkerhoff; that thereafter a warranty deed for the land
was executed which was in fact a mortgage, executed to se-
cure the indebtedness to the cattle company, and was accepted
by that company with full knowledge of the fact and subject
to the lien in his favor for $35,000. The cattle company re-
plied with denials and the allegation that the mortgage lien of
$35,000 was fictitious and made for the purpose of cheating
the company. H. L. Brinkerhoff was brought into the case
and he filed an answer denying the averments in the petition
of the cattle company and alleging that the deed under which
the company claimed title was invalid inasmuch as it was
without consideration. He did not file any pleading nor con-
test with his uncle as to the item of indebtedness of $35,000
and the mortgage deed which he had given to secure the pay-
ment of that amount. The judgment in the Nebraska case
upheld the title of the cattle company, but it was determined
that the title was held by the cattle company subject to the
mortgage lien set up by A. B. Brinkerhoff and the court decreed
a foreclosure of this lien, giving A. B. Brinkerhoff a judgment
for $1,961.67, which was not secured by the mortgage. In
the present case the jury returned a verdict finding for the
defendants, and of the rulings and judgment the plaintiffs
complain.

The first point raised by the plaintiffs is on instruction num-
ber seven, in which the jury was told that by the decision of
the Nebraska court involving the title of the Neleigh ranch
and the mortgage claimed thereon, there had been a full ac-
counting between A. B. Brinkerhoff and H. L. Brinkerhoff,
upon all of their many transactions and accounts up to that
time, and in the accounting so had in that case it was ju-
dicially determined that H. L. Brinkerhoff was then indebted
to A. B. Brinkerhoff in the sum for which judgment was ren-
dered in that case, after deducting a credit in favor of H. L.
Brinkerhoff amounting to $114,000, on account of the sale and
transfer by him to A. B. Brinkerhoff of the lands now in
controversy in this action known as the Red Ranch. There

is reason to complain of the instruction as the rule declared was of vital consideration in the present case. The adjudication in the Nebraska court can only be conclusive on the parties as to matters which were directly in issue in the former case and not to those incidentally brought into the case during the trial. What was in issue in the Nebraska case? The cattle company alleged ownership and possession of a tract of land, stating that A. B. Brinkerhoff unjustly and without right claimed an interest in it and asking for the quieting of its title. A. B. Brinkerhoff answered challenging ownership of the cattle company, alleging that the deed under which it claimed title was without consideration and invalid. He also set up a lien upon the land evidenced by a mortgage deed given him by H. L. Brinkerhoff to secure a note for $35,000 and he also asked for a foreclosure of the lien. The only pleading filed by H. L. Brinkerhoff was an answer that the deed executed by him to Nye and Hover who conveyed to the cattle company was without consideration, and he asked that his title should be quieted against the claims of the cattle company. Two matters were involved in that controversy. One the validity of the deed under which the cattle company held and the other the validity of the lien claimed by A. B. Brinkerhoff. The first matter was determined in favor of the cattle company, and as to that there is no longer any controversy. As to the second the facts in controversy were the existence of the deed from H. L. Brinkerhoff to A. B. Brinkerhoff and the validity of the mortgage purporting to secure its payment. The cattle company was contending that the note did not evidence a real indebtedness and that there was no real basis for the mortgage deed set up by A. B. Brinkerhoff. That was the only question that divided the parties on the second branch of the case. Testimony was introduced pro and con on the point whether or not the note represented a real indebtedness and good faith attended the execution of the mortgage. In resisting the attack upon the validity of these, testimony as to the transactions involved in the giving of the note was brought out. It was not necessary to a decision of the question that the inquiry should extend further into the dealings of the parties than to show that there was a consideration for the note and mortgage. Anything outside of that was not within the issues and not necessary to the decision of that

case. The cattle company was not asking for nor was it interested in a general accounting between the Brinkerhoffs. Those codefendants were not asking for an accounting between themselves and cannot be regarded as adversary parties. H. L. Brinkerhoff, as we have seen, did not question the validity of the note and mortgage or the right of his uncle to foreclose it. There was nothing adverse between them in the pleading or evidence and no attempt to have determined the effect of any other of the many transactions which occurred between these defendants running through a period of more than seven years. They stood together on every issue raised between the plaintiff and the defendant and no conflicting or hostile claims were brought into issue between them. Standing in this attitude their rights and liabilities other than was involved in the issue of the cattle company cannot be regarded as adjudicated. (23 Cyc. 1279.) As between the Brinkerhoffs there were conveyances of lands, mortgages made and deeds executed which were in fact mortgages; there were shifting of liens, moneys invested, collected and reinvested, instruments made, claimed by one party to be releases of liens and by the other to be actual transfers of property; numerous personal loans were involved, some of which were for comparatively large amounts; and there were other dealings between them of great number and variety. It is plain that a general accounting between them covering all these transactions was not within the contemplation of the parties or the scope of the judgment. If it had been adjudged that a general accounting was had when the question had not in fact been submitted to the court for a decision, the judgment to that extent would have been void. (*New v. Smith*, 86 Kan. 1, 119 Pac. 380; 23 Cyc. 1318.) The fact that an inquiry was had as to an indebtedness sufficient to constitute a basis for the mortgage on the Neleigh ranch did not conclude the parties beyond the real matters in controversy in that litigation. It is not enough to bind the parties that a matter was touched upon incidentally. To work an estoppel the judgment must fairly have covered the point. It has been said:

"For estoppel by judgment results from a matter having been directly and substantially in issue in a former suit, and having been heard and finally decided." (Caspersz on Estoppel, 4th ed., 472.)

As to matters merely incidental or immaterial it has been remarked:

"But the rule does not extend to every issue determined in the former suit. It extends only to those which were necessary to the disposal of the matter involved. Although a judgment may, in express terms, purport to affirm a particular fact or rule of law, yet if such fact or rule of law was immaterial to the issue, and the controversy did not turn upon it, the adjudication will not conclude the parties in reference thereto." (24 A. & E. Encycl. of L. 768.)

Another statement of the rule is:

"In order that a judgment may operate as res judicata and be conclusive evidence of a fact sought to be established by it, it must be made to appear that the same fact not only was in issue and determined in the former suit, but that it was a material fact therein. Facts found which were not necessary to uphold a former judgment do not conclude the parties. Although a decree in express terms professes to affirm a particular fact, yet if such fact was immaterial, and the controversy did not turn upon it, the decree will not conclude the parties in reference to that fact." (15 R. C. L. 980.)

Our conclusion is that the instruction challenged was not warranted, and that the giving of it was material error.

There is a further complaint as to an instruction in which the jury was told that under the deed executed by plaintiffs on January 24, 1910, and the written instrument dated October 17, 1912, attached to the deed mentioned, the execution and delivery of which was not controverted, A. B. Brinkerhoff became the owner of the Red Ranch, and that the verdict must be for defendants unless it was found that the alleged deed dated March 11, 1912, from A. B. Brinkerhoff to plaintiffs, was executed and delivered during his lifetime. As already shown the deed of January 24, 1910, although absolute in form, was given and received as a security for the payment of a debt, and has been treated as a mortgage by all the parties. Was its character changed by the subsequent agreement and the instrument executed as evidence of the agreement on October 17, 1912? Plaintiffs invoke the rule or maxim "once a mortgage, always a mortgage," and insist that the actual title being in them could not be transferred or affected by a parole agreement or the writing of October, 1912. Some of the courts have held that when a deed is given, absolute in form, to secure an indebtedness and there is an agreement or bond of defeasance or any equities of the grantor, these may be surrendered or

canceled by such a parole agreement, and in that way leave or vest the title absolutely in accordance with the terms of the first deed. (*Cramer v. Wilson,* 202 Ill. 83 ; *Sears v. Gilman,* 199 Mass. 384. See other authorities mentioned in case last cited.) In Kansas where a mortgage does not transfer an estate in land and is only an incumbrance or a security for a debt, and where a deed absolute in form given to secure a debt is no more than an equitable mortgage, the decisions of states in which mortgages have a different status and convey an estate to the mortgagee are not entirely applicable. While upon its face the instrument in question transferred the title to the uncle, it in fact was not a transfer, and "it has always been sufficient in a court of equity to show a state of facts outside of the deed which should render the deed a mortgage or would render it defeasible." (*Moore v. Wade,* 8 Kan. 380, 387.) That such an instrument may be shown by parole proof to be something else than it purports to be is an anomaly in the law, but one that has been sanctioned from the beginning. The deed in question was a mortgage when made, and remained a mortgage at least until the second instrument was executed. The title to the land was not changed by the execution of the deed any more than it would have been by the execution of an ordinary mortgage, and it is well argued that under the statute of frauds an estate or interest in land cannot be conveyed by parole. Is the written instrument of October 17, 1912, a valid transfer of the land? In *LeComte v. Pennock,* 61 Kan. 330, 59 Pac. 641, an instrument in form a warranty deed was executed as security for a debt, and although possession of the property was obtained by the mortgagee, and some repairs were made by him upon it, it was held that the mortgage continued to be a mortgage and that the title would remain in the mortgagor until a new agreement was executed which would operate as a transfer of title. It was there said:

"It is a general rule that the character of a transaction is fixed at its inception, which is in line with the old maxim 'once a mortgage, always a mortgage.' The instrument given to Chartier was confessedly a mere equitable mortgage at the beginning, and nothing short òf a new agreement could convert it into a deed or transfer of title." (p. 334.)

It was there held that under the facts in the case no new agreement was made, and that the mortgagor was not estopped

by any of the facts to claim title in himself. It may be conceded that the change may not be effected by a parole agreement, and we have the question then, Was the later writing sufficient for that purpose? It is contended that it is indefinite and lacks the ordinary recitals of a conveyance. By itself it would be indefinite, but the plaintiffs making the instrument included in and made a part of it the original deed, and together they constitute a written contract relating to the transfer of title to land. The two writings must be considered together as a single instrument, and when so considered substantially all the clauses and covenants of a conveyance are found in it. We think it may be regarded as a new agreement or rather a written evidence of one, and according to some of the testimony there was consideration for the agreement. Besides, as the agreement was in writing and signed by the plaintiffs, it imports a consideration. The later writing to which the deed was attached is open to the interpretation that the collateral or mortgage feature of the deed had been canceled, and that the reissued deed is a present grant and an unconditional conveyance. If there is no question as to the execution and delivery of the combined writings, they may be regarded as sufficient to meet the requirements of the statute of frauds, and in the absence of evidence of a different intention, to convert the deed formerly a mortgage into a transfer of title. It is true that there is some ambiguity in the written instrument, and it is contended that it was not given or accepted as a transfer of title. There was introduced in evidence a letter written by A. B. Brinkerhoff about two years afterwards which tended to show that he was holding the land under an agreement that if within five years the plaintiff should pay back the money or debt for which the deed was given with six per cent interest the land would be retransferred to him. There is not only a question as to the intention of the parties in making the instrument of October, 1912, but it is also insisted that there is no evidence that the first deed was in fact attached to the writing when it was made, and no evidence of delivery of that instrument. The court should have qualified the instruction by stating in effect that if the deed was in fact attached to the later instrument, and both were delivered with the intention of transferring the interest of the grantors to the grantee, it

Brinkerhoff v. Bank.

would be sufficient to show a transfer of title of the ranch to A. B. Brinkerhoff, and that if these facts had been shown by sufficient evidence the defendant would be entitled to a recovery unless a subsequent transaction or transfer affected such ownership and right of possession of the land. From what has been said it is manifest that the court was not warranted in saying to the jury that the only question for its determination was whether or not the deed from A. B. Brinkerhoff to plaintiffs, dated March 11, 1912, as to which evidence had been offered, was in fact executed and delivered by A. B. Brinkerhoff during his lifetime.

Another contention is that the court erred in admitting evidence of previous statements of the plaintiff at the trial of other cases and elsewhere to the effect that he had sold the land and parted with all ownership in it. These statements were inconsistent with his claims in the present action and were properly admitted. (2 Wigmore on Evidence, § 1048.) It may be that the evidence of plaintiff's testimony in the Nebraska case took too wide a range, but it related to some extent to matters about which the plaintiff had given testimony in the present case, and the undue extension of the inquiry cannot be regarded as reversible error.

There is some reason to complain of the testimony of the judge of the Nebraska court as to the considerations that moved him in his decision of that case after weighing the evidence. Like any other witness he was competent to give testimony not inconsistent with the record as to the identity of the matters actually litigated in the former action. The considerations and findings of a court should be expressed in the record, but his secret and unexpressed reasons which actuated him in making the decision are not admissible any more than are those of a jury. (*Packet Company v. Sickles,* 72 U. S. 580; 1 Herman on Estoppel and Res Judicata, 237; 2 Van Fleet's Former Adjudication, 845; 23 Cyc. 1538.) Within the rule portions of the evidence of the judge should have been excluded.

For the errors pointed out the judgment is reversed and the cause remanded for a new trial.