No. 46,464

URBAN RENEWAL AGENCY OF THE CITY OF DODGE CITY, KANSAS, a Corporation, *Appellee*, v. LAVIEIEA GOLDSBERRY, *Appellant.*

(499 P. 2d 1044)

Opinion filed July 19, 1972.

*Lelyn J. Braun,* of Corley, Braun & Smith, of Garden City, argued the cause and was on the brief for the appellant.

*R. R. Mitchell,* of Mitchell, Smith & Patton, of Dodge City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is a condemnation action filed by the Urban Renewal Agency of the city of Dodge City against the defendant LaVieiea Goldsberry to acquire property for an urban renewal project as authorized by K. S. A. 17-4756. The trial court found that the agency had the power of condemnation and that the defendant's property was necessary for its lawful corporate purposes. The defendant filed a notice of appeal from the award of the appraisers.

Thereafter, the agency moved the court to dismiss the appeal for the reason that just compensation for the defendant's property had already been determined and agreed upon by a valid and binding contract. The trial court found the defendant was bound by the contract and that just compensation had been agreed upon therein

which was binding on the defendant, and dismissed the appeal from the award of the appraisers. The defendant seeks review of the trial court's dismissal.

Prior to the filing of the condemnation proceedings the agency filed an action against the defendant asking that the following contract entered into by the parties be specifically performed:

"OPTION TO PURCHASE
PROJECT: Kansas R-35
PARCEL No. 115-E
ADDRESS: Dodge City, Kansas

"THIS OFFER, made this 23rd day of May, 1969, by Mrs. LaVieiea Goldsberry, Dodge City, Kansas, hereinafter called the 'Seller,' to the URBAN RENEWAL AGENCY OF THE CITY OF DODGE CITY, KANSAS, hereinafter called the 'Agency.'

"WITNESSETH: That for and in consideration of one dollar ($1.00) and other valuable considerations in hand paid, the receipt and sufficiency of which are hereby acknowledged, the Seller, being the owner thereof, hereby offers and agrees to sell and convey to the Agency the following described property, together with all improvements thereon, including but not limited to heating, lighting and plumbing fixtures, located in the City of Dodge City, County of Ford, State of Kansas, to-wit:

"The West 2 feet of Lot 16 and the East 23 feet of Lot 18 on Front Street in Dodge City, Kansas, and the East 6 inches of the partition wall between the building on the above described property and the building adjoining on the West, also known as Goldsberry Retail Liquor Store, 117 West Wyatt Earp Blvd.

according to the recorded plat thereof, together with any surplus ground adjacent thereto as would be disclosed by an accurate survey of the premises, which may by law or otherwise be vested in the Seller, upon the following conditions:

"The total purchase price shall be * FIFTEEN THOUSAND EIGHT HUNDRED AND SEVENTY-FIVE DOLLARS . . . ($15,875.00) cash, to be paid on delivery of warranty deed as hereinafter provided.

"If this offer is accepted, the Agency shall endorse its acceptance hereon and mail notice thereof to the Seller at the address specified below. This offer shall be irrevocable for a period of ninety (90) days from the date hereof and shall remain in force thereafter until terminated by Seller giving thirty (30) days written notice to the Agency of such termination. The Seller agrees that this offer shall not be revocable and that he will not sell, mortgage, encumber, or otherwise dispose of such property or any part thereof prior to said expiration date, except to the Agency. This agreement shall be binding upon the Seller and his heirs, executors, administrators, successors, and assigns.

"Upon this Option being exercised as aforesaid, Seller will within ten (10) days thereafter deliver to the Agency an abstract of title covering said property. The Agency shall then deliver said abstract to an Abstract Company to certify to date at the Agency's expense. After current certification by an

Abstract Company, the Agency shall have ten (10) days in which its attorney shall make any objections to the title. The Seller shall have thirty (30) days after any such objection to cause defects in the title to be corrected, and the title to be made a good and merchantable fee-simple title, and will comply with said attorney's requirements for correction of such title. If such title cannot be made merchantable within thirty (30) days after notice to Seller of such defects, the Agency shall not be bound by its agreement to purchase under this Option and may proceed to acquire said property by condemnation, in which case it is agreed, as an independent stipulation, that the just compensation shall be the purchase price as set forth herein."

The defendant filed her answer and cross-petition in the following form:

"Comes now the defendant and for answer to the plaintiff's petition alleges and states:

"1. That she denies each and every allegation thereof except such as are hereinafter specifically admitted.

"2. The defendant admits she signed an option agreement similar to that attached to the plaintiff's petition as Exhibit 'A', but states that she did so only after an agent of the plaintiff represented to her that the difference between the total purchase price of Fifteen Thousand Eight Hundred Seventy-five Dollars ($15,875.00) provided for in said option agreement and the balance of Twelve Thousand Two Hundred Ninety-three Dollars and Eight Cents ($12,293.08) owing to First Federal Savings and Loan Association of Dodge City, Kansas, would be her property, and that all taxes, special assessments, and other liens against the property would be paid by the plaintiff to the various agencies involved in addition to said purchase price of Fifteen Thousand Eight Hundred Seventy-five Dollars ($15,875.00); that under the circumstances at the time this defendant executed said option to purchase agreement, she was permitted neither time nor opportunity to examine the provisions of said agreement and to be advised as to their legal effect; that subsequent to her execution of said option to purchase agreement, the defendant was notified by the plaintiff that in addition to the mortgage in favor of First Federal Savings and Loan Association, other liens would be deducted from said purchase price of Fifteen Thousand Eight Hundred Seventy-five Dollars ($15,875.00) as follows:

"SBA loan ................................... $4,313.67
Taxes ........................................ 123.00
Special Assessments ........................... 498.05

thus creating a deficiency of One Thousand Three Hundred Fifty-two Dollars and Eighty Cents ($1,352.80) in the indebtedness secured by liens against the real estate affected by said option to purchase agreement; that she had been advised that the aforementioned liens were to be paid out of the total purchase price of Fifteen Thousand Eight Hundred Seventy-five Dollars ($15,875.00), in addition to satisfaction of the mortgage of First Federal Savings and Loan Association in the sum of Twelve Thousand Two Hundred Ninety-three Dollars and Eight Cents ($12,293.08), this defendant would never have executed said option to purchase agreement upon which this lawsuit is based.

"3. That inasmuch as the aforementioned misrepresentation was relied

upon by this defendant and operated as an inducement to secure her signature upon said option to purchase agreement, said option to purchase agreement should be set aside as null and void."

The record discloses that the matter was submitted to the court on documentary evidence and the court made the following conclusions:

"The Court concludes that 'specific performance' should not be resorted to in this case, in that defendant does not have recorded fee simple title, nor a merchantable title; and in view of the fact that defendant would necessarily be required to make other financial arrangements before she could give a warranty deed conveying a fee simple title; and also in view of the fact that plaintiff may resort to condemnation proceedings under the Kansas Statutes. It appears that the Option to Purchase contract contemplates this in the fifth paragraph thereof.

"The 'independent stipulation' that the just compensation shall be the purchase price in the event of condemnation (as set forth in the option contract in the fifth paragraph thereof) could not be upheld in the State of Kansas."

As previously stated, the agency then filed their petition for condemnation and in connection with that proceeding the court dismissed the appeal of the defendant from the appraisers' award on the ground that the defendant was bound in the condemnation case to receive as compensation the amount stipulated in the agreement.

The disposition of this appeal depends upon the validity of the option to purchase agreement. Defendant complains of the trial court's finding that the binding nature of the option contract was determined in the prior case and the matter is *res judicata*. We are not concerned with whether or not *res judicata* applies. In either event we are satisfied the trial court's construction of the option to purchase was correct. The contract does not offend public policy. The right to receive just compensation for land taken for public use is designed for the protection of the rights of individuals. Individual rights are subject to contract in any manner the holder of such rights may determine. (17 Am. Jur. 2d, Contracts, § 173, p. 531.)

The agency, by this agreement, obtained an option to purchase defendant's property for a specific price. The agreement further provided that in event the title to the property could not be made merchantable the agency could acquire the property by condemnation. Provision was also made that if condemnation occurred just compensation would be the purchase price set forth in the agreement.

A similar agreement was considered in *Danforth v. United States,*

308 U. S. 271, 84 L. Ed. 240, 60 S. Ct. 231, pp. 282, 283. The government questioned the validity of the agreement and the court said:

".  .  .  In the objection to the commissioners' report the prayer is for entry of a judgment in the agreed sum 'and upon payment of the same that the Court decree an appropriate judgment in favor of plaintiff for the said easement.' We construe the accepted offer as an agreement to fix the price at the named figure for the easement sought. Paragraph 3 of the letter shows condemnation was in mind.

".  .  .  We have no doubt that the authority to purchase given to the Secretary of War is sufficiently broad to authorize a purchase of petitioner's interest in land subject to perfecting the title through condemnation. The effect of such an agreement is to fix the value of the easement when the authority of the Court is invoked against a party to the agreement to acquire good title. In dealing with a stipulation to waive a requirement of filing a claim for tax refund with the Commissioner of Internal Revenue, we held such waiver enforceable in the face of a statutory requirement for such filing. The convenience of preparation for trial and the interest of orderly procedure was decisive there. Here the same reasons with the supporting language as to the power of purchase leads to the conclusion that the trial court erred in striking the answer and refusing the motion to determine the value at the agreed price.  .  .  ."

In *United States v. 252.57 Acres of Land, Etc.*, 157 F. Supp. 347 (N. D. Ga. 1957), the landowner executed an option to the United States for the purchase of his land for $5,500 and the option was accepted. The government filed condemnation and the landowner denied the amount constituted just compensation. The court granted summary judgment in favor of the United States and said:

"Paragraph one of the option to purchase and 'Option for Purchase of Land and for Flowage Easement' provides:

" '(1) The purchase price of said land and flowage easement is to be Five Thousand Five Hundred and No/100 ($5,500.00) payable as soon as the United States has accepted this option and has had a reasonable time within which to secure and examine the evidence of title to said land and easement and to obtain the necessary approval of title; **.'

"Paragraph six of the option provides, as follows:

" '(6) The vendor agrees that the United States may, at its election, and notwithstanding the prior acceptance of this option, acquire title to said land or any portion thereof or any interest therein, by condemnation or other judicial proceedings, in which event the vendor agrees to co-operate with the United States in the prosecution of such proceedings and also agrees that the consideration hereinabove stated shall be the full amount of the award of just compensation inclusive of interest for the taking of said land and that any and all awards of just compensation that may be made in the proceeding to any defendant shall be payable and deductible from said amount and that said consideration shall also be in full satisfaction of any and all claims of the vendor

for the payment of the right of occupancy and use hereinafter provided for in paragraph (7).'

"The option to purchase easement for flowage purposes subject to the perfecting of title through condemnation is valid. *Danforth v. United States,* 308 U. S. 271(1), 60 S. Ct. 231, 84 L. Ed. 240.

"Such an agreement fixes the value in condemnation proceedings brought later by the Government against the landowner to make good title. *Danforth v. United States,* supra (2)." (p. 348.)

We are in accord with the reasoning in these two cases and as a result must support the binding effect of the agreement in the instant case. The defendant landowner's argument ignores the fact that condemnation was contemplated in the agreement.

The landowner argues that the liens on the property involved exceed the agreed purchase price. This does not affect the validity of the agreement or the right to proceed by condemnation. It may be that the payment of the liens will exhaust the amount for which the land is acquired. Normally, the lienholders would be entitled to the funds in proper priority until they are exhausted.

Defendant further argues that in the prior case (specific performance) the trial court held that the independent stipulation as to just compensation in event of condemnation could not be upheld in the State of Kansas. In the condemnation case the court reversed this finding and upheld the contract. We do not believe the holding of the trial court as to the effect of the contract upon condemnation in the prior case was binding on the court in the subsequent case since it was immaterial to the subject matter in the prior case. The effect of the agreement in event of condemnation was not necessary to a determination of the issues in the prior case. The rule is well stated in *Brinkerhoff v. Bank,* 109 Kan. 700, 205 Pac. 779, as follows:

"A judgment is only conclusive between parties as to matters substantially in issue and actually litigated and does not conclude the parties as to everything incidentally brought into the controversy or as to matters immaterial to the subject matter in litigation." (Syl. ¶ 1.)

Also, see 46 Am. Jur. 2d, Judgments, § 423, p. 593.

We see no necessity of discussing other matters raised in the briefs in view of what we have stated herein.

The judgment is affirmed.