CHARLES D. COOK AND CAROLYN C. COOK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6463–80.     Filed March 8, 1983.

*Julian S. Greenspun,* for the petitioners.

---

*Robert E. Marum,* for the respondent.

DRENNEN, *Judge*: Respondent determined a deficiency in, and an addition to, petitioners' 1976 Federal income tax in the amounts of $384,437 and $19,222, respectively. The issues for decision are (1) whether the transfer of appreciated stock and real properties by Charles D. Cook to his former wife pursuant to a divorce decree was a taxable transaction, and (2) whether petitioners are liable for an addition to tax pursuant to section 6653(a).[1]

### FINDINGS OF FACT

Petitioner Charles D. Cook (petitioner) and Carolyn C. Cook, husband and wife, resided in Cos Cob, Conn., at the time they filed their petition herein. They filed a joint return for the taxable year 1976 with the Internal Revenue Service, Andover, Mass. Petitioner Carolyn C. Cook is a party herein only because she filed a joint return with her husband.

Petitioner was married to Sheila Gamble Cook (hereinafter referred to as Sheila or the former wife) on March 10, 1945. Sheila was the daughter of John Gamble, one of the founders and principal stockholders of Procter & Gamble Co. Petitioner and Sheila separated in 1974, and their marriage was formally dissolved on May 12, 1976. Pursuant to a court order in respect of the marital dissolution, petitioner transferred to Sheila 8,995 shares of Procter & Gamble stock and his interest in three parcels of real property located in Maine. The dispute herein centers on whether such transfer constitutes a taxable disposition.

At the time of their divorce, petitioner and Sheila each submitted an individual financial statement to the divorce court. These statements indicated that petitioner had assets valued at $1,851,777, while Sheila had assets valued at $2,587,957. Petitioner's assets included at least 8,995 shares of Procter & Gamble stock,[2] and an interest in three parcels of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year 1976.

[2]The facts were unclear as to whether petitioner held more than this amount.

land located in and around Sorrento, Maine. The facts surrounding his acquisition of these assets follow.

### Procter & Gamble Stock

Petitioner acquired his Procter & Gamble stock by way of gifts from Sheila, as well as from his father-in-law, John Gamble, and his mother-in-law, Elizabeth Gamble (hereinafter referred to as his in-laws). These gifts were made each year beginning in 1947 and continuing through 1961. The following table reflects the amount and value of the Procter & Gamble stock received by petitioner from Sheila and his in-laws:

### Gifts from Sheila

| Year | Number of shares | Market value at date of gift |
|---|---|---|
| 1947 | 45 | $3,072.65 |
| 1948 | 45 | 2,947.50 |
| 1949 | 40 | 3,182.80 |
| 1950 | 750 | 65,737.50 |
| 1951 | 80 | 5,813.60 |
| 1952 | 85 | 5,695.00 |
| 1953 | 88 | 5,900.40 |
| 1954 | 80 | 5,852.80 |
| 1955 | 65 | 6,040.45 |

### Gifts from in-laws[1]

| Year | Number of shares | Market value at date of gift |
|---|---|---|
| 1947 | 80 | 5,546.40 |
| 1948 | 80 | 5,140.00 |
| 1949 | 60 | 5,000.00 |
| 1950 | 80 | 5,536.80 |
| 1951 | 80 | 5,746.40 |
| 1952 | 80 | 5,497.60 |
| 1953 | 80 | 5,500.80 |
| 1954 | 60 | 5,745.00 |
| 1955 | 60 | 5,922.00 |
| 1956 | 120 | 5,936.80 |
| 1957 | 120 | 5,904.00 |
| 1958 | 60 | 4,452.60 |

| 1959 | 30 | $2,669.40 |
| 1960 | 30 | 2,922.00 |
| 1961 | 20 | 2,799.60 |

[1] These figures indicate the total amount of stock transferred from both John Gamble and Elizabeth Gamble. From 1959 through 1961, only Elizabeth Gamble made gifts to petitioner.

Due to various stock splits, petitioner held 17,118 shares of Procter & Gamble stock in October 1974.

Sheila decided to make yearly gifts of her Procter & Gamble stock in order to equalize her and petitioner's respective financial positions. The in-laws made yearly gifts to petitioner, as well as to his and Sheila's four children, in equal amounts. The number of shares given each year by each of the donors was measured by the number of shares that could be given without incurring gift tax liability.

The gifts were made free of any restrictions on petitioner's use of the stock. At the time the gifts were made, ownership was transferred to petitioner's name on Procter & Gamble's books, and dividends on such stock were paid to him.[3] However, it was the hope of the donors that the stock would remain Gamble "family resources," and petitioner testified that he did not feel free to sell his stock "without family consultation."

In November 1974, after petitioner and Sheila had separated, petitioner sold 8,000 shares of his Procter & Gamble stock.[4] There was no way of determining whether the stock sold had been received from Sheila, or from his in-laws. The proceeds received from this sale, as well as the dividends received on his Procter & Gamble stock, were deposited into petitioner's separate account at the Loring Wolcott agency, which was his and Sheila's investment counselor. These funds later were used to pay for both family expenses and personal investments.[5]

---

[3] On his 1974 tax return, petitioner reported $30,939 of dividends on his Procter & Gamble stock. On his 1976 return, he reported $14,302 of dividends on such stock.

[4] This stock was sold on the recommendation of the Gambles' investment adviser that they all sell a part of their Procter & Gamble stock. Sheila and other members of the Gamble family also followed this advice.

[5] For example, petitioner withdrew $148,000 from the Loring Wolcott account in 1975 to purchase a home in Cos Cob, Conn., where he resided at the time of filing the petition herein.

## *The Maine Properties*

On February 16, 1961, petitioner purchased a one-half interest in real property known as Calf Island from his father-in-law for $9,500, the fair market value of the property. This property was located in Sorrento, Maine, and consisted of Calf Island and two smaller islands. The remaining one-half interest was purchased by Sheila's brother, James B. Gamble, Jr. Calf Island had been used by the Gamble family for summer vacations for many years, and John Gamble was buried there.

On October 16, 1961, petitioner and Sheila, as joint tenants, purchased a one-half interest in real property located in Sorrento, Maine, known as Shoremead. The property was purchased from Christine J. Sommer for $5,000, its fair market value at that time.

On November 19, 1963, petitioner purchased real property located in Sorrento, Maine, known as Doan's Point. The property was purchased from his mother-in-law, Elizabeth Gamble, for $2,500, its fair market value at that time.

Petitioner initiated a divorce action against Sheila on November 26, 1974, seeking to have the marriage dissolved. In a cross-complaint filed on May 3, 1976, Sheila also sought to have the marriage dissolved and claimed, inter alia, her right (1) to alimony; (2) to the return of assets acquired by reason of their marriage, including but not limited to, realty and stocks; and (3) to counsel fees.

In a "Memorandum of Decision" filed by the divorce court on May 12, 1976, petitioner's marriage to Sheila was dissolved. The decision did not indicate which party prevailed; it simply found that there had been an irretrievable breakdown of the marriage and that "The marriage is dissolved." This decision made no provision for alimony or counsel fees sought by Sheila. The court did, however, order that—

title and ownership of the following assets of the plaintiff [petitioner] be transferred by the plaintiff to the defendant [Sheila]:

(1) 8,995 shares of Procter & Gamble;

(2) An undivided one-half of Calf Island, Sorrento, Maine;

(3) Doan's Point, Sorrento, Maine; and

(4) A one-quarter share of Shoremead, Sorrento, Maine.

The order stated no reason or basis for the directed transfer.

Thereafter, on June 7, 1976, petitioner filed a "Motion for

Clarification and/or Modification of Judgment" with the divorce court. It was petitioner's position that the court's decision omitted an essential element, namely, the income tax consequences of the above-ordered transfer. The stock and real properties had all appreciated in value, and on May 6, 1976, the date of the dissolution proceeding, their aggregate value was $1,037,475.60. The aggregate basis of these properties was $26,553.30, and thus the potential gain realized on the transfer was $1,010,922.30. On brief, in support of his motion, petitioner stated that the "memorandum of decision does not make clear whether the property transfer is in settlement of marital rights or simply a division of property. The distinction is highly relevant for tax purposes." Petitioner concluded that because of the unfairness which he perceived would result by virtue of the court's order, the court should modify its decision of May 12, 1976, by ordering the transfer of the property indicated therein "net of all taxes."

The divorce court entered a "Memorandum of Decision" on August 12, 1976, denying petitioner's motion without explanation. Petitioner was dismayed by the decision since he believed he would incur a large tax liability as a result of the court-ordered transfer, and discussed the situation with the divorce court judge, Judge Dube. At that time, petitioner was told not to worry since the transfer was merely a "return of property" and therefore was not taxable.

On his return filed for the taxable year 1976, petitioner did not report a gain from the transfer of property pursuant to his divorce. He did, however, disclose on the return that he had "Distributed to Sheila G. Cook 8,995 SHS Procter & Gamble Co. In Accordance With Court Order of 5/6/76."

Petitioner and Carolyn Cook were married in June 1976.

Respondent determined in his statutory notice of deficiency that petitioner realized a long-term capital gain on the transfer of the properties herein to Sheila to the extent that the fair market value of such properties on the date of the dissolution proceeding (May 6, 1976), exceeded their adjusted bases.

## OPINION

The primary issue for decision is whether petitioner's transfer of appreciated stock and real property (hereinafter

sometimes referred to collectively as properties) to Sheila pursuant to a court order in respect of their divorce constitutes a taxable disposition.

Petitioner maintains that Sheila was the "actual owner" of the properties transferred and, therefore, no taxable disposition occurred. Alternatively, he claims that under Connecticut law, Sheila had a vested interest in the properties which amounted to a "species of common ownership" and that assuming a transfer of ownership did occur, it was a nontaxable division of property between co-owners.

Respondent claims that petitioner was the owner of the properties in question and that the transfer was a disposition in satisfaction of Sheila's marital rights. Therefore, he claims that petitioner realized a taxable gain on the transfer to the extent that the value of the properties exceeded their aggregate basis.

The leading case on this issue is *United States v. Davis*, 370 U.S. 65 (1962). In that case, the parties entered into a settlement agreement, which was incorporated in the divorce decree, pursuant to which the husband agreed, specifically as a "division in settlement of their property," to transfer 1,000 shares of Dupont Co. stock to the wife. The stock was the husband's separate property and had appreciated in value while he owned it. Under Delaware law, the State wherein the divorce action was instituted, the wife had only statutory marital rights in the husband's property, including a right of intestate succession and a right upon divorce to a share of the husband's property. Under the settlement agreement, the wife accepted the division "in full settlement and satisfaction of any and all claims and rights against the husband whatsoever (including but not by way of limitation, dower and all rights under the laws of testacy and intestacy)."

The Supreme Court recognized that the accretion in value of the stock was taxable but the question was *when* — at the time of the transfer to the wife or at a later time when the wife sold the stock? The taxpayer-husband asserted that the present transfer was comparable to a nontaxable division of property between two co-owners, while the Government contended that it more resembled a taxable transfer of property in exchange for the release of an independent legal obligation, the husband's duty to support his wife.

The Court found that under Delaware law, the "inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership" and, since the wife had no other interest in the husband's property, upon dissolution of the marriage the wife shares in the husband's property only to such extent as the Court deems reasonable, as provided in Delaware law. The Court found that the Delaware law only placed a burden on the husband's property, rather than making the wife a part owner thereof, which partook more of a personal liability, such as the husband's obligation of support and alimony, rather than creating a property interest in the wife. The Court thus concluded that the transfer was not a division of property and, consequently, was a taxable event.

The Court next turned to the question of how to measure the taxable gain. Admittedly, this was the difference between the husband's basis in the stock transferred and the value of the property received in exchange. The property received in exchange was the release of the wife's inchoate marital rights. Since there is no accurate method of measuring the value of these rights, in prior cases some courts had refused to impose a tax because the gain was found to be indeterminable. *Mesta v. Commissioner*, 42 B.T.A. 933 (1940), revd. 123 F.2d 986 (3d Cir. 1941); *Halliwell v. Commissioner*, 44 B.T.A. 740 (1941), revd. 131 F.2d 642 (2d Cir. 1942), cert. denied 319 U.S. 741 (1943); *Commissioner v. Marshman*, 279 F.2d 27 (6th Cir. 1960), revg. 31 T.C. 269 (1958). The Supreme Court found this approach to be erroneous on the theory that if the parties acting at arm's length judged the marital rights to be equal in value to the property for which they were exchanged, it was permissible to assume, for purposes of measuring the gain, that the value of the marital rights released was equal to the value of the property received in exchange therefor. The amount of the gain was thus found to be the difference between the husband's basis in the stock transferred and the fair market value of that stock at the time of the transfer.

The *Davis* case has been applied by various courts to mean that if the wife had no rights in the property that rose to the dignity of co-ownership, there was no division of property, and the transaction was held to be taxable as a transfer of the property involved in exchange for the release of the spouse's

marital rights. *Pulliam v. Commissioner*, 39 T.C. 883 (1963), affd. 329 F.2d 97 (10th Cir. 1964), cert. denied 379 U.S. 836 (1964); *Collins v. Commissioner*, 46 T.C. 461 (1966), affd. 388 F.2d 353 (10th Cir. 1968), revd. per curiam 393 U.S. 215 (1968);[6] *Wiles v. Commissioner*, 60 T.C. 56 (1973), affd. 499 F.2d 255 (10th Cir. 1974). See also *Thomas v. Thomas*, 159 Conn. 477, 271 A.2d 62 (1970). The Supreme Court of Connecticut, in *Thomas v. Thomas, supra* at 66, said—

the law seems clear: a federal capital gains tax will be incurred on a transfer of property made between a husband and a wife pursuant to a divorce or legal separation unless local law holds that the wife had a vested interest in the property transferred similar to coownership as in a community property state. No such vested interest in the wife is recognized in Connecticut.[7] * * *

About the only recent cases we have found holding that a transfer of property, pursuant to divorce, under State statutes similar to those of Delaware (*Davis*) and Connecticut (this case), was not a taxable transaction are cases where the State courts have held that under those State statutes, the wife has rights in the husband's property amounting to co-ownership. See *Imel v. United States*, 523 F.2d 853 (10th Cir. 1975); *Collins v. Commissioner*, 412 F.2d 211 (10th Cir. 1969).[8] Compare *Beard v. Commissioner*, 77 T.C. 1275 (1981), on appeal (9th Cir., June 15, 1982).

We now consider whether Sheila had an interest in petitioner's property that can be construed as co-ownership. Ownership of property is determined under State law. Legal interests and rights are created by, and exist under, State law. Federal law determines whether transactions involving interests or rights created by State law shall be taxed. *Imel v. United States, supra* at 855.

---

[6]After affirmance by the Tenth Circuit, the Oklahoma Supreme Court held that the transfer involved "merely operated to finalize the extent of the wife's vested interest in property she and her husband held under a 'species of common ownership,'" and that the transfer was a nontaxable division of property by co-owners. The U.S. Supreme Court thereupon remanded the Federal case to the Tenth Circuit for consideration in light of the opinion of the Oklahoma court. The Tenth Circuit then found the transfer to be a nontaxable division of property.

[7]A State court would not normally decide a Federal tax question, but the question was argued by the defendant in that case.

[8]We have found no case which explains why, if the transfer is not a division of property, it must, under any and all circumstances, be a taxable event.

The stock here involved was apparently given to petitioner outright by either Sheila or her parents. The stock was transferred to petitioner's name on the corporate records, he received the dividends thereon, he sold some of the stock in his own name, and reinvested some of the proceeds in assets title to which was taken in his name, alone. If there were any strings attached to the gifts, they are not revealed in the record. In fact, to accomplish the tax-savings purpose of the Gambles, the stock had to be transferred to petitioner outright. We do not believe there can be any doubt that legal title to the stock was in petitioner.

We reach the same conclusion with respect to petitioner's interests in the Maine real estate that was transferred to Sheila pursuant to the divorce decree. In 1961, petitioner purchased with his own funds an undivided one-half interest in Calf Island with his brother-in-law James F. Gamble, Jr., at its fair market value. In 1961, petitioner and Sheila purchased, as joint tenants, a one-half interest in real property located in Sorrento, Maine, known as Shoremead. In 1963, petitioner purchased from his mother-in-law real property located in Sorrento, Maine, known as Doan's Point. The deed was to petitioner, alone. The divorce decree ordered that title and ownership of these three parcels of real estate be transferred by petitioner to Sheila. It is clear that legal title to petitioner's one-half interest in Calf Island and legal title to Doan's Point were in petitioner alone. Sheila did have an interest as joint tenant in the one-half interest in Shoremead.

We next consider why the divorce court ordered petitioner to transfer the properties to Sheila. Compare *Beard v. Commissioner, supra*. While the law of the State where real property is located controls the title and ownership of that property, the law of the State wherein the parties are domiciled and where the divorce takes place controls what the divorce court can direct with respect to those properties. In this case, that would be the law of Connecticut. However, we do not find there is sufficient difference between the statutory laws of Connecticut and Maine to require different conclusions, either as to the property interests and rights of a married couple or in the authority of a divorce court judge to direct what shall be done

with that property. Consequently, we will limit our discussion to the laws of Connecticut.[9]

Connecticut General Statutes Annotated, section 46–9 (West 1978), provides that neither husband nor wife shall acquire by marriage any right to or interest in any property held by the other before or acquired after such marriage, except the share of the survivor in the property as provided by section 46–12. Section 46–12 provides, inter alia, that "On the death * * * of the husband or wife, the survivor shall be entitled to the use for life of one-third in value of all the property, real and personal, legally or equitably owned by the other at the time of his or her death." In *Thomas v. Thomas*, *supra*, the Supreme Court of Connecticut found that neither husband nor wife acquires by statute any right in the property of the other except for certain survivorship rights, whether such property is acquired before or after the marriage, and that such right does not amount to co-ownership. On the surface, it would appear that Sheila had no vested interest in any of the property owned by petitioner that he transferred to Sheila pursuant to the divorce decree. *Tobey v. Tobey*, 165 Conn. 742, 345 A.2d 21, 25 (1974).

Conn. Gen. Stat. Ann. sec. 46–51 (West 1978), provides as follows:

At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46–36, the superior court may assign to either the husband or wife all or any part of the estate of the other; and may pass title to real property, without any act on the part of either the husband or the wife, to the other party or to a third person or may order the sale of such real property, when in the judgment of the court, it is the proper mode to carry such decree into effect. * * * In fixing the nature and value of the property, if any, to be so assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46–48, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the

---

[9]In the divorce proceedings, neither petitioner nor Sheila requested the court to take judicial notice of and to apply Maine law. That being the case, the court was not required to apply Maine law, and there is no evidence that it did so. See *Wood v. Wood*, 165 Conn. 777, 345 A.2d 5 (1974).

acquisition, preservation or appreciation in value of their respective estates.[10]

This statute empowers the divorce court to transfer property held separately by one spouse to the other, irrespective of whether the property was acquired prior to, or subsequent to, the marriage. In determining whether to order a transfer of such property, and if so, how much, the court has wide discretion. *Ross v. Ross*, 172 Conn. 269, 374 A.2d 185 (1977); *Pasquariello v. Pasquariello*, 168 Conn. 579, 362 A.2d 835 (1975).

Petitioner argues that the properties transferred were already owned by Sheila, resting on the theory that the divorce court invoked equitable principles pursuant to Connecticut law and determined that Sheila was the "true owner" of such properties. Specifically, he claims that the court either imposed a constructive trust or recognized the existence of a resulting trust over such properties in favor of Sheila, and that the actual transfer under such circumstances was not a taxable transaction. This argument is appealing because it would produce a seemingly more equitable result and would also seem more consistent with the testimony of Judge Dube, the divorce court judge who directed the transfer. Technically, however, we cannot find that the circumstances support either a constructive or a resulting trust.

Generally speaking, a constructive trust is an equitable remedy which compels one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. See 5 A. Scott, Trusts 410 (3d ed. 1967). The trust is imposed, not on the basis of the intentions of the parties (as is a resulting trust), but in order to prevent unjust enrichment. 5 A. Scott, *supra* at 3415. The Supreme Court of Connecticut has stated that a constructive trust arises as a result of fraud, imposition, circumvention, artifice or concealment, or abuse of confidential relations. *Worobey v. Sibieth*, 136 Conn. 352, 71 A.2d 80 (1949).

Petitioner does not assert that the alleged constructive trust resulted from any particular conduct on his part. Rather, he

---

[10]Sec. 46–52, Conn. Gen. Stat. Ann. (West 1978), which provides for the award of alimony, mentions all of the same factors for consideration except that contained in the last sentence above.

simply asserts that imposition of such trust was necessary to prevent him from being unjustly enriched, since the properties he had acquired, both by gift and by purchase, were Gamble family resources. He relies on several Connecticut cases in support of his assertion. Such reliance is misplaced.

In *Manyak v. Manyak*, 29 Conn. Supp. 1, 268 A.2d 806 (1970), the husband filed a complaint seeking the imposition of a constructive trust over property held jointly with his wife at the time of their divorce proceeding. The court found that the conveyance to the wife of her one-half interest had been induced by fraud, and imposed a constructive trust over such interest in favor of the husband.

In *Hieble v. Hieble*, 164 Conn. 56, 316 A.2d 777 (1972), the owner of property, fearing the reoccurrence of cancer, transferred title to her son for estate tax purposes with the understanding that the transfer was conditional, and the property was to be returned to her, should she recover. After his mother recovered, the son refused to reconvey the property to her, and the court therefore imposed a constructive trust over such property in her behalf.

There are no facts in the instant case similar to those in the above two cases which caused the courts to impose constructive trusts, and those cases are readily distinguishable.

On the other hand, if a disposition of property is made under circumstances that raise an inference that it was not intended that the person taking the property should have the beneficial interest in such property, a resulting trust arises in favor of the transferor. 5 A. Scott, Trusts 404.1 (3d ed. 1967). For example, a resulting trust is presumed to arise where property is purchased by one person, while legal title is taken in the name of another. 5 A. Scott, *supra* at 404.1. However, in the case of a husband and wife, a gift is presumed under such circumstances unless rebutted by a showing that no gift was intended. See *Whitney v. Whitney*, 171 Conn. 23, 368 A.2d 96 (1976); *Walter v. Home National Bank & Trust Co. of Meriden*, 148 Conn. 635, 173 A.2d 503 (1961).

Under the circumstances herein, we cannot find that a resulting trust arose with respect to either the Maine properties or the Procter & Gamble stock. Petitioner's interest in the Maine properties was acquired by purchase with his own funds for fair market value, and the deeds of transfer contained no

restrictions on petitioner's use or alienation of such properties. The Procter & Gamble stock was acquired by gift from Sheila and her mother and father, and the gifts were completed. While we accept as true petitioner's representation that the properties were considered part of the Gamble family resources, and that petitioner was given the stock and was sold the real estate only because of his status as a member of the Gamble family, we are not convinced that any of these properties were acquired and held only on the condition that the marriage continue.

Petitioner relies on two other cases to support his assertion that the divorce court simply recognized Sheila's actual ownership of properties transferred even though title was held in petitioner's name. In *Dubicki v. Dubicki*, 186 Conn. 709, 443 A.2d 1268 (1982), the divorce court ordered the husband to transfer his interest in jointly owned property to his wife. The property had been acquired by a gift from the wife's mother. The court did not, however, impose a constructive trust over the husband's interest in the property, as petitioner suggests, or otherwise recognize an ownership interest in such property in the wife prior to the divorce. Rather, as the Supreme Court of Connecticut noted, the divorce court simply determined what it believed to be a reasonable and equitable division of marital assets pursuant to Conn. Gen. Stat. Ann. sec. 46–51 (West 1973), taking into consideration the manner in which the property had been acquired.

In *Kroop v. Kroop*, 186 Conn. 211, 440 A.2d 293 (1982), the divorce court ordered the husband to transfer to his wife his stock interest in a business which they had operated jointly. The business originally had been acquired with a downpayment by the wife and a note endorsed by the wife's father. The wife owned a one-half interest in the business. Over the years, the husband had failed to pay to the wife her share of the profits from the business in an amount approximately equal to the value of his stock interest at the time of divorce. The Supreme Court of Connecticut upheld the order of transfer and, in dicta, stated that such transfer was not taxable to the husband because the wife already had the beneficial interest in his stock and the transfer merely restored the full value of such stock to her.

The reason the divorce court in the instant case ordered the transfer of petitioner's properties to Sheila appears to be based on the theory espoused in *Dubicki* and *Kroop*.

Petitioner offered the oral testimony of Judge Norman Dube, the State trial referee who presided at the divorce proceedings and entered the memorandum of decision directing the transfer of the properties to Sheila, to explain the theory on which the transfer was ordered. Respondent objected to the testimony on the grounds that the order was not ambiguous and parole or extrinsic evidence is not admissible to explain, modify, or contradict the terms of a written instrument where upon its face there is no ambiguity. There was certainly no ambiguity on the face of the order. It very succinctly ordered that "the title and ownership of the following assets of the plaintiff be transferred by the plaintiff to the defendant," thereafter listing the assets. However, it gave no reason or theory for directing the transfer. Under Connecticut law, Judge Dube had the right to order the transfer and we doubt that he was required to give his reasons therefor in the order. Nevertheless, the theory or reason for ordering the transfer has considerable bearing on the Federal tax issue before us, and we do not believe that the parole evidence rule, if available to respondent in the first place (see *Estate of Craft v. Commissioner*, 68 T.C. 249, 259–264 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979)), should deny this Court and the parties the firsthand testimony of the judge who entered the order, explaining the basis for his decision, as long as his testimony is consistent with the order. *Schumert & Warfield v. Security Brewing Co.*, 199 F. 358 (E.D. La. 1912); *Gorham v. City of New Haven*, 79 Conn. 670, 66 A. 505 (1907); *Brinkerhoff v. Home Trust & Savings Bank*, 109 Kan. 700, 205 P. 779 (1921). We conclude that the testimony of Judge Dube was admissible and we give consideration to it.[11] See *Beard v. Commissioner, supra.*

Judge Dube testified, in essence, that his reaction to the

---

[11]We sustain respondent's objection to the admission of the revenue agent's report offered by petitioner to prove that at one time during the audit, respondent's agent referred to the transfer as a "property settlement." The agent was not present to testify, the statement contained in the report was pure hearsay, the use of the term "property settlement" was ambiguous, and respondent is not bound by the statements made by his agents prior to the issuance of the notice of deficiency. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324 (1974).

evidence received in the divorce proceeding was that the stock was given to Charles, and the real estate was conveyed to him because of his marriage to Sheila, that there was "more or less a quasi-ownership" in Sheila in the property, that the properties were considered by the Gambles to be a part of the family estate, that when the contract of marriage was broken, Sheila should get back what she and her family had given Charles, and that the purpose of the transfer he ordered was "To give back to Mrs. Cook that which I felt was rightfully hers." He also testified that he did not award any alimony or attorney's fees because both parties had enough income and that the properties ordered transferred were not in exchange for the release of any marital obligations that Charles had towards Sheila. He testified, further, that when Charles asked him to modify the order to take into consideration the Federal tax consequences, he denied it without a hearing because he did not "see how Uncle Sam could get any tax money from this, because this was hers"; and that he did not feel there were any tax consequences because, although the property was in Charles' name, it was actually owned by Sheila.

Thus, while the order of transfer enforced by the divorce court was not a "division of property" in the ordinary meaning of those words,[12] neither was the transfer ordered to discharge Charles' marital obligations to Sheila.

Unlike in *Davis*, petitioner and Sheila did not enter into a settlement agreement and Sheila did not specifically surrender any marital rights, nor was she specifically required by the court order to surrender any other property or rights, tangible or intangible. Petitioner received nothing in exchange for the assets transferred, and we cannot find that he received anything that could be considered taxable income to him. Petitioner received nothing to which an assumed value could be attached, as in *Davis*. While it is difficult to classify the transaction in the terminology usually used with reference to this issue, we think the divorce judge simply intended to return to Sheila the property he thought belonged to her, regardless of legal title. He apparently gave considerable weight to the last factor mentioned in Conn. Gen. Stat. Ann.

---

[12]The court apparently gave no consideration to dividing any of the other properties owned by both Charles and Sheila.

sec. 46–51, *supra*, which requires the divorce court to give consideration to the contribution of each party in the acquisition of the assets in making a division of property. He intended to return the parties to the same positions in which they were with respect to these properties before they were married.[13] Judge Dube believed that Sheila had some sort of interest in these properties, tangible or intangible, legal or equitable, which became vested in her when the marriage contract was dissolved.

We conclude that under these particular circumstances, the transfer of the properties was more in the nature of a division of property rather than a satisfaction of any marital obligations of petitioner to Sheila. *Beard v. Commissioner, supra.* We do not believe *Davis* or any of its progeny requires a different conclusion. We recognize that the divorce decree herein cut off Sheila's right to share in petitioner's estate in the event of his death and that opinions in some of the decided cases (the *Davis* progeny) suggest that this factor is sufficient, in the absence of a finding of co-ownership, to constitute a taxable event. See, e.g., *Wiles v. Commissioner*, 60 T.C. at 61–62, 499 F.2d at 258; *McKinney v. Commissioner*, 64 T.C. 263, 267 (1975); *Pulliam v. Commissioner*, 39 T.C. at 885, 329 F.2d at 99–100. But none of these cases involved a situation such as exists herein, where the source of the taxpayer's property was his spouse or her family. Cf. *Beard v. Commissioner, supra*, and particularly 77 T.C. at 1290 n. 9 (second paragraph). They are therefore distinguishable. Indeed, *Davis* itself emphasized the context of the particular case and recognized the possibility that there might be situations where the enunciated rule might not apply. See 370 U.S. at 70–71. We hold that the transaction was not taxable to petitioner.

Having decided the substantive issue for petitioner, we need not address the issue of the addition to tax for negligence. Nevertheless, we will briefly express our views on that issue. The substantive issue herein concerning the taxability of the transfer of the property involved substantial questions of law, as indicated by our rather lengthy discussion above. See also *Kasey v. Commissioner*, 54 T.C. 1642, 1651 (1970), affd. per

---

[13] Of course, the stock given to petitioner by Sheila's family and the Maine real estate were not owned by Sheila prior to the marriage but they were a part of Sheila's family assets.

curiam 457 F.2d 369 (9th Cir. 1972), cert. denied 409 U.S. 869 (1972). The situation herein, in our view, simply does not warrant the imposition of an addition to tax for negligence, and, indeed, as revealed in the transcript, we were somewhat dismayed at respondent's refusal to concede this issue at trial. If called upon, we would hold that petitioner is not liable for the addition to tax asserted by respondent.

Because of concessions by the parties,

*Decision will be entered under Rule 155.*