T.C. Memo. 1995-592


UNITED STATES TAX COURT


JAMES A. PETRIE IV, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10286-94.                    Filed December 13, 1995.


James A. Petrie IV, pro se.

<u>Christopher Neal</u>, for respondent.


MEMORANDUM OPINION


DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]   Respondent determined deficiencies in petitioner's 1990

---

[1]      Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect for the taxable years in issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

and 1991 Federal income taxes in the amounts of $2,587 and $1,183, respectively, and an addition to tax for late filing of the return in the amount of $699 for 1990.

After concessions by the parties,[2] the issues for decision are: (1) Whether petitioner is entitled to claim head of household filing status for the years in issue; (2) whether petitioner is entitled to claim a mortgage interest rental expense for 1990; (3) whether petitioner may exclude rental income and is entitled to claim additional rental expenses for 1991; (4) whether petitioner may exclude from income one-half of his retirement income during the years in issue; and (5) whether petitioner is liable for the addition to tax pursuant to section 6651(a)(1) for his failure to file a timely 1990 Federal return.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Westminster, Colorado, on the date the petition was filed in this case.

Petitioner and his former wife were married for 30 years and six children were born of their marriage. Three of their six children were dependents of petitioner and his former wife during the years in issue under section 151. Petitioner and his former wife lived together in the family residence until January 5, 1991, when due to marital difficulties, petitioner moved from the

---

[2] Petitioner conceded the rental income and expense adjustments for 1990. Respondent conceded that the Form W-2, Wage and Tax Statement, income for Ms. Petrie in the amount of $345.55 should be excluded from petitioner's 1990 income.

family residence.  The three dependent children and Ms. Petrie continued to reside in the family residence until March 1992. Among their marital assets, petitioner and Ms. Petrie owned residential rental property in Mesa, Arizona (Arizona rental property).

On April 17, 1991, by Temporary Orders in and for the District Court, County of Arapahoe, State of Colorado (Temporary Orders) petitioner was ordered to make certain payments, including temporary child support payments and awarded temporary possession of certain personal marital property.  The Temporary Orders considered the earning potential of petitioner and Ms. Petrie and considered petitioner's AT&T retirement income in arriving at its determinations.  The Temporary Orders required petitioner to pay all expenses, including the first and second mortgage payments totaling approximately $340 per month on the Arizona rental property and directed that the rental property income of approximately $600 per month be paid directly to Ms. Petrie.  The Temporary Orders were intentionally "phrase[d] * * * in terms of receipt of the proceeds from the Arizona rental property rather than a maintenance order".  The Temporary Orders awarded Ms. Petrie temporary custody of the dependent children and required petitioner to pay child support in accordance with the State of Colorado guidelines.

By Final Orders dated January 3, 1992, in and for the District Court, County of Arapahoe, State of Colorado (Final

Order), the Court entered a decree for dissolution of petitioner's and Ms. Petrie's marriage. The Final Orders awarded petitioner the family residence, and granted Ms. Petrie the right to remain in the family residence until August 1992. Ms. Petrie was awarded the Arizona rental property subject to the outstanding mortgages.

The Final Orders made reference to petitioner's AT&T retirement income as follows:

> The Court finds that the Husband is the recipient of a pension from AT&T which was accumulated during the course of the marriage and is, therefore, marital property subject to division by this Court. From the evidence, the Court has determined that both parties have made substantial contributions during the course of the marriage, and that it would be inequitable to not grant the Wife any interest in the proceeds of this pension. From the testimony, the court finds the present amount being paid under the pension is $1,849.87 per month. It is ordered that the parties shall divide equally the income from the pension commencing March 1, 1992. [Emphasis added.]

Ms. Petrie and the three dependent children moved from the family residence to the Arizona rental property in March 1992.[3] At that time, petitioner took possession of the family residence. After regaining possession of the family residence, petitioner first timely filed a 1991 joint Federal return and in May 1992 filed an unsigned 1990 joint Federal return.[4]

---

[3] Ms. Petrie and the dependent children moved from the family residence in March 1992 although the Final Orders provided for them to remain in the family residence until August 1992.

[4] Subsequent to the filing of the 1990 joint Federal return, petitioner signed a declaration, under the penalties of perjury, that he examined the 1990 joint Federal return and to the best of his knowledge and

The 1990 joint Federal return claimed married filing jointly filing status, claimed a personal exemption for petitioner, an exemption for Ms. Petrie and three dependency exemptions.  The 1990 joint Federal return reported petitioner's W-2 income, Ms. Petrie's Form W-2 income in the amount of $345.55, petitioner's AT&T retirement income in the amount of $20,408,[5] a taxable IRA distribution, 100 percent of the Arizona rental property income in the amount of $5,500, and 100 percent of the Arizona rental property expenses in the amount of $3,799.[6]  When he filed his 1990 joint Federal return, petitioner paid taxes in the amount of $2,077, and estimated interest on late filing of $1,000 and disclosed his former spouse's failure to sign the return.

Petitioner later filed an amended 1990 Federal return in which he claimed head of household filing status, omitted the exemption amount for Ms. Petrie, omitted Ms. Petrie's Form

---

belief it was true, correct, and complete.

[5]    Petitioner reported the AT&T retirement income on line 7 "wages, salaries, tips, etc."

[6]    For 1990, on petitioner's Schedule E, the Arizona rental property expenses incorrectly reflected a total of $3,829.  The Arizona rental property expenses are as follows:

| | |
|---|---:|
| Automobile and travel | $522 |
| Cleaning and maintenance | 795 |
| Insurance | 336 |
| Taxes | 850 |
| Motel | 20 |
| Meals | 63 |
| Depreciation | 1,213 |
| Total | 3,799 |

W-2 income, and excluded the Arizona rental property income.

The notice of deficiency, based on petitioner's 1990 joint Federal return, changed petitioner's filing status to married filing separately, disallowed the exemption for Ms. Petrie, reduced petitioner's rental income by $2,750,[7] and disallowed $2,629 of petitioner's rental expenses.

For 1991, petitioner initially timely filed a joint Federal return and claimed exemptions for himself and Ms. Petrie and three dependency exemptions. The 1991 joint Federal return reported petitioner's W-2 income, petitioner's AT&T retirement income, 100 percent of the income from the Arizona rental property in the amount of $6,000, and Arizona rental property expenses of $4,608.[8]

Petitioner amended his 1991 joint Federal return in which he claimed head of household filing status, omitted the exemption amount for Ms. Petrie, and excluded the Arizona rental property income.

---

[7]     One-half of $5,500, the amount reported by petitioner on the 1990 joint Federal return.

[8]     The 1991 rental expenses reported by petitioner on the joint Federal return were as follows:

| | | |
|---|---|---|
| Auto and travel | $300 | |
| Cleaning and maintenance | | 200 |
| Insurance | | 325 |
| Mortgage interest | 1,530 | |
| Repairs | | 250 |
| Taxes | 790 | |
| Depreciation | | 1,213 |
| Total | 4,608 | |

The notice of deficiency, based on the 1991 joint Federal return disallowed the exemption amount for Ms. Petrie, reduced petitioner's reported rental income by $3,000[9] and disallowed $2,304[10] of petitioner's rental expense.

The first issue for decision is whether petitioner is entitled to use head of household filing status[11] for the years in issue. Petitioner contends that he is entitled to claim head of household filing status as claimed on his 1990 and 1991 amended returns. Respondent contends that petitioner was married during the years in issue and because Ms. Petrie did not join in the filing of the returns, petitioner must claim married filing separately filing status.

Section 1 imposes a tax on the taxable income of individuals. The rate of tax depends on the taxpayer's filing status. Sec. 1(a) through (d). There are four filing categories for individual taxpayers: (1) Married filing a joint return; (2) unmarried head of household; (3) unmarried individual; and (4) married filing a separate return.

---

[9] One-half of the amount reported on petitioner's 1991 joint Federal return.

[10] One-half of the amount claimed on petitioner's 1991 joint Federal return.

[11] Head of household filing status requires that the taxpayer who is not married at the close of the year maintain as his home a household which constitutes for more than one-half of the taxable year, the principal place of abode of any person who is a dependent of the taxpayer, provided that the taxpayer is entitled to a deduction for such person under section 151. Sec. 2(b)(1)(A)(ii).

The marginal tax rates are lowest for married individuals filing jointly and they progressively increase for each category as follows:  Head of household, individual, and married filing separately.

The threshold issue in determining filing status is to determine marital status.  Marital status for purposes of filing a joint or separate return is determined under section 7703.

Under section 7703(a), a taxpayer who is "married" may be considered unmarried for tax purposes, if he is legally separated under a decree of divorce or separate maintenance or meets the requirements of section 7703(b).[12]

An individual is considered legally separated under a decree of divorce or separate maintenance if the decree "expressly and affirmatively provides that the parties live apart in the future".  Capodanno v. Commissioner, 69 T.C. 638, 646 (1978), affd. 602 F.2d 64 (3d Cir. 1979) (quoting Boettiger v. Commissioner, 31 T.C. 477, 483 (1958)).  A decree of support or temporary alimony which does not require separation is not considered a decree of divorce or separate maintenance within the meaning of section 7703(a).  Dunn v. Commissioner, 70 T.C. 361 (1978), affd. without published opinion 607 F.2d 995 (2d Cir. 1979).

---

[12]     Section 7703(b) requires that the taxpayer maintain as his home a household which constitutes for more than half of the taxable year the principal place of abode for a child with respect to whom the taxpayer is entitled to a dependency deduction.

Petitioner separated from Ms. Petrie on January 5, 1991. At the close of the 1990 tax year petitioner was <u>married</u>, lived with his former wife in the family residence, and does not qualify for head of household filing status.

Petitioner was separated from Ms. Petrie at the close of the 1991 tax year. First, we must consider whether the Temporary Orders constitute a decree of separate maintenance for purposes of section 7703. The Temporary Orders failed to provide that petitioner and Ms. Petrie live apart. The Temporary Orders constitute a temporary decree for support which does not satisfy the requirement that the parties be legally separated under a decree of divorce or separate maintenance. <u>Dunn v. Commissioner</u>, <u>supra</u>.

Secondly, petitioner did not maintain as his household a principal place of abode for a dependent child and accordingly does not meet the requirements of section 7703(b). Therefore, for 1991, petitioner was married for purposes of section 7703 and is not entitled to claim head of household filing status. Accordingly, respondent is sustained on this issue.

The second issue for decision is whether petitioner may claim a mortgage interest expense for 1990. Petitioner contends that he is entitled to a mortgage interest deduction for the interest paid on the Arizona rental property. Respondent contends that petitioner was unable to substantiate the mortgage interest deduction.

Interest on a mortgage on real estate is deductible.  Sec. 163.  Where mortgaged property is jointly owned and the co-owners are jointly liable on the mortgage each owner is entitled to a deduction for the mortgage interest that he actually pays out of his own funds.  Castaneda-Benitez v. Commissioner, T.C. Memo. 1981-157.

Section 6001 and the regulations promulgated thereunder require a taxpayer to maintain adequate records to substantiate the claimed deductions.  However, if certain claimed deductions are not substantiated, we are permitted to estimate them when we are convinced from the record that the taxpayer has incurred such expense and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Petitioner testified that he paid $1,575 of mortgage interest expense on the Arizona rental property for 1990.

For 1990, the record shows that petitioner's funds were used to make the mortgage payments.  Further, the Temporary and Final Orders required petitioner to continue to make the mortgage payments on the Arizona rental property of approximately $340 a month.  We further note that Ms. Petrie assumed the outstanding mortgage in 1992.  We are convinced from the record that there was an outstanding mortgage on the Arizona rental property in 1990, and that petitioner made the mortgage payments. Accordingly, we find that petitioner is entitled to a mortgage

interest deduction for 1990 on Schedule E for the mortgage interest paid by him in the amount of $1,575. Cohan v. Commissioner, supra. (See discussion of mortgage interest deductions by co-owners of real property infra pp. 11-12.)

The third issue for decision is whether petitioner had additional rental income and is entitled to claim additional rental expenses for 1991. Petitioner contends he should be permitted to exclude the rental income on his 1991 return and is entitled to claim the rental expenses because the Temporary Orders mandated such treatment. Respondent contends that petitioner must report his share of the income and expenses.[13]

Income with respect to joint tenancy property is allocated and taxed in proportion to that which each co-owner is entitled to receive under local law. Parsons v. Commissioner, 43 T.C. 378 (1964). A co-tenancy under Colorado law provides that each of two joint tenants owns an undivided one-half interest in the property as a whole. Commercial Factors v. Clarke & Waggener, 684 P.2d 261 (Colo. Ct. App. 1984).

However, co-owners are entitled to a deduction for mortgage interest and real estate taxes paid on jointly-owned property to the extent that they have actually paid these amounts and provided that no other tenant has previously claimed a deduction

---

[13] Prior to trial, respondent conceded that petitioner should report rental income of $750 and be allowed rental expenses of $4,032. At trial, respondent withdrew this concession.

therefor.  <u>Blackburn v. Commissioner</u>, T.C. Memo. 1979-266, affd. 681 F.2d 461 (6th Cir. 1982); <u>Finney v. Commissioner</u>, T.C. Memo. 1976-329.  The reason for treating interest and taxes differently from other types of expenses and losses is that even though a co-owner may not be personally liable for the entire amount of the interest and taxes, payment may be necessary to preserve that co-owner's rights in the entire property.  <u>Powell v. Commissioner</u>, T.C. Memo. 1967-32.

For the first 3 months of 1991, petitioner was entitled to receive one-half of the rental income from the Arizona rental property as a co-owner.  Pursuant to the Uniform Dissolution of Marriage Act, Colo. Rev. Stat. sec. 14-10-114 (1987), the Temporary Orders awarded Ms. Petrie the $600 monthly rental income from the Arizona property subsequent to March 21, 1991. Under Colorado law, the right to income from real property is an incident of ownership and the award thereof is not an award of alimony.  <u>McDonald v. McDonald</u>, 150 Colo. 492, 374 P.2d 690 (1962).  The $600 monthly rental income awarded to Ms. Petrie also was not child support because the Temporary Orders specifically provided that petitioner was to pay $960 per month as child support.

Petitioner, therefore, must include in his 1991 income, one-half of the Arizona rental income for the first 3 months of 1991 ($900).  <u>Parsons v. Commissioner</u>, <u>supra</u>; <u>Commercial Factors v. Clarke & Waggener</u>, <u>supra</u>.  He is not required to include in his

1991 income any portion of the Arizona rental income awarded to Ms. Petrie for the period April through December 1991.

Petitioner testified that pursuant to the Temporary Orders, he paid the mortgage interest and real estate taxes on the Arizona rental property. The record supports petitioner's testimony, and we find petitioner to have been a credible witness.

The mortgage interest and real estate taxes are contained in the mortgage payments. Therefore we are convinced from the record that petitioner made the mortgage interest and real estate taxes payments. Cohan v. Commissioner, supra. Petitioner is therefore entitled to a deduction for mortgage interest in the amount of $1,530 and real estate taxes of $790, totaling $2,320. Blackburn v. Commissioner, supra.

With respect to the Arizona rental property expenses, other than the mortgage interest and real estate taxes, petitioner is entitled to a deduction for one-half of those amounts totaling $1,145.[14]. Estate of Boyd v. Commissioner, 28 T.C. 564 (1957).

Next, we must consider whether petitioner may reduce his income by one-half of his retirement income. On his 1990 and 1991 returns, petitioner reported $20,408.25 and $22,198.40 of

[14]

| Auto and travel | $150 |
|---|---|
| Cleaning and maintenance | 100 |
| Insurance | 163 |
| Repairs | 125 |
| Depreciation | 607 |
| Total | 1,145 |

retirement income.  At trial, petitioner raised the issue of whether he may reduce his gross income for 1990 and 1991 by one-half of his AT&T retirement income.  Petitioner contends that because his AT&T retirement income was considered marital property by the Final Orders entered in 1992 and his former spouse was ultimately awarded one-half of his AT&T retirement benefits commencing with the monthly payments made on or after March 1, 1992, he should be taxed on only one-half of the retirement benefits that he received during 1990 and 1991. Respondent contends that petitioner received all the AT&T retirement income during the years in issue and must report the full amount.

Section 61(a) provides that gross income includes all income from whatever source derived, unless excludable by a specific provision of the Code.  Respondent's determinations in the statutory notice of deficiency are presumed to be correct, and the taxpayer has the burden of proving otherwise.  Rule 142(a); Helvering v. Taylor, 293 U.S. 507 (1935); Welch v. Helvering, 290 U.S. 111 (1933).  Exemptions from gross income, having been specifically stated, should be construed with restraint. Commissioner v. Jacobson, 336 U.S. 28, 49 (1949); Hagar v. Commissioner, 43 T.C. 468, 484 (1965).

The Final Order directed that Ms. Petrie receive one-half of petitioner's AT&T retirement benefits commencing March 1, 1992. Prior to March 1, 1992, petitioner received the AT&T retirement

income directly and made payments pursuant to the Temporary and Final Orders.  Petitioner received 100 percent of the AT&T retirement benefits during the years in issue and must report the full amount unless otherwise excluded.  Sec. 61(a).  There is no basis for exclusion.  Rule 142(a).

Petitioner's argument that Colorado is a community property State is incorrect.  In re Marriage of Ellis, 36 Colo. App. 234 (1975), affd. 191 Colo. 317 (1976), 538 P.2d 1347 and 552 P.2d 506.  Petitioner is not entitled to reduce his AT&T retirement income by the one-half amount ultimately awarded to Ms. Petrie.  Cook v. Commissioner, 80 T.C. 512, 518-19 (1983), affd. without published opinion 742 F.2d 1431 (2d Cir. 1984).  Accordingly, respondent is sustained on this issue.

The final issue for decision is whether petitioner is liable for the addition to tax imposed pursuant to section 6651(a)(1) for failure to file a timely 1990 return.  Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes: (1) The failure did not result from "willful neglect"; and (2) the failure was "due to reasonable cause".  "Willful neglect" has been interpreted to mean a conscious, intentional failure, or reckless indifference.  United States v. Boyle, 469 U.S. 241, 245-246 (1985).  "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and was nonetheless unable to file a return within the prescribed time.  United

States v. Boyle, supra at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The addition to tax equals 5 percent of the tax required to be shown on the return for the first month, with an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, not to exceed a maximum of 25 percent. Sec. 6651(a)(1).

Petitioner testified that 1990 was the first time he had filed a late return. Petitioner testified that he was in the middle of a divorce and did not have access to the premises or his tax records until March of 1992. Petitioner testified that his Form W-2 went to the family residence which was in the exclusive possession of his former spouse.

Petitioner testified "I did everything I could to get it done" and that he was precluded from filing a timely 1990 return because he did not have access to the family residence or his records until March 1992. We find that petitioner failed to exercise ordinary business care in timely filing his 1990 return. Petitioner could have requested a duplicate Form W-2 in order to timely file his 1990 return but failed to do so.

Accordingly, we find petitioner is liable for the addition to tax pursuant to section 6651(a)(1).

To reflect the foregoing,

Decision will be entered
under Rule 155.